Judge Marshall

delivered the Opinion of the Court.
On the 31st of October, 1837, B. G. Cutter & Co. filed this bill, in the Louisville Chancery Court, against Ben-jam in Monroe, praying that the goods of the defendant might be attached and held subject to the demands set up in the bill, unless he should give bond with security, that he would not remove himself or his goods out of this Commonwealth, but hold them subject to the order and decree of the Court, or on such other condition as might be safe; and finally, that the goods might be subjected to the payment of said demands; and for other appropriate relief.
Seizure of deft’s goods; his answer; restoration of the goods, upon bond, in pursuance of the order of seizure.
A supplemental bill.
The statements on which this prayer is founded, are, in substance, that the complainants, as assignees of Bliss, Walker and Oakley, merchants of New York, hold two notes, of the same date, executed by the defendant, and payable, the one six, and the other eight, months after date, to said B., W. and O. for goods purchased of them, under false representations as to his ability to pay, and for which he never intended to pay; that he had refused to pay the amount of the first note, when it fell due, either in money or goods, or to make any arrangements for securing it; that he had told them, when interrogated on the subject, that he would not remove his goods; that they had brought suit on the first note, by petition, but had not obtained judgment, and would not for ten days or more; and that since the suit was brought, his goods had been removed from his store, in the night, and they believed and charged that, he was about to remove them clandestinely out of the country, or would very shortly dispose of them, put the money in his pocket, and leave these debts and others wholly unpaid; and that he has, in effect, said to others that, if sued, he would put his goods in his pocket, &c.
The note, “payable eight months after date,” was not due when the bill was filed.
Upon this bill, the Marshal of the Court was ordered to seize the goods of the defendant, to an amount equal to both of the notes, with interest and costs, and to hold the same subject to the order of the Court, unless the defendant should execute bond with security, conditioned to perform any decree which should be rendered upon the matters of the bill; but if such security were given to restore them. The goods were accordingly seized; and after filing an answer denying the material allegations of the bill, and the jurisdiction of the Court thereon, the defendant executed a bond, with security, conditioned as directed in the order; which bond was returned by the Marshal, with the subpoena.
On the 26th of January, 1838, the complainants filed an amended bill, in which they state that they had obtained a judgment on the first note, and that an execution issued thereon, without their directions, had been ret *95 urned “nulla bona:” that Monroe had left this State permanently, and, as they charged, would not return. They say, “they again repeat the charge that he was privately and fraudulently removing his goods, to delay, deceive and defraud his creditors, at the time of suing out the restraining order,” and they charge, that “save the levy of the goods under said order, and the security given touching said goods, he has disposed of every thing he had or has in this state.” They pray that the attached goods may be subjected, &c. and for general relief.
Proofs.
Decree.
Principal question.
That a party who had purchased goods, and given his note for them, had obtained the credit by false & fraudulent representations, intending never to pay for the goods, would be grounds, for a bill in chancery, to rescind the contract, and have the goods restored.
But these facts, or the fact that a party may go into chancery, to rescind the sale and obtain a restoration of the goods, cannot change the character of a note, given for the goods, from amere legal, to an equitable demand, or give the Chancellor any jurisdiction to enforce payment of the note, by a seizure of the goods, or otherwise—even where the goods can be identified in the hands of the purchaser.
Query, whether an assignment of the note, would carry with it the right to go into equity, to rescind the contract, and get the goods.
The proof conduces sufficiently to show that, at the time of filing the bill, the defendant was concealing his goods, and attempting to keep or take them out of the reach of legal process. And, on the hearing, the Chancellor decreed against the defendant personally, the sums secured by the two notes, with interest and costs, and suggested that if the same were not paid in sixty days., he would, at the request of the complainants, proceed by proper process against the defendant and his sureties in the bond above mentioned, to compel satisfaction of the decree.
In revising this decree, the principal question presented for consideration, is whether the court of equity had any jurisdiction to decree in the case, as presented, either by the original or the amended bill.
The allegations made in the original bill, to the effect that the goods for which the notes were given, were purchased with the intention of not paying for them, and that a credit was obtained by reason of fraudulent misrepresentations made with that view, might have laid the foundation for the rescission of the contract, on the ground of fraud, if they had been followed up by other statements appropriate to that species of relief. But the bill does not contain such statements, and was evidently not framed with a view to a rescission of the contract, but to the enforcement of it. And the charge, and even proof, of fraud in the original transaction, can, therefore, have *96 no weight on the question of jurisdiction; nor any other effect in the case, than that of exciting unfavorable presumptions against the defendant, and corroberating other charges and evidences of fraudulent intentions.
A charge, in a bill, that a def’t. who is sued at law, has secretly removed his goods from his store, and will, as complainant believes, remove
them from the country, or sell them and secrete the proceeds, so as to prevent the judg’t from being satisfied when obtained, cannot have the effect of trauslating the case from the common law tribunal, in which it was commenced, to a court of equity. The most that the ch’r can do, upon such a bill, is to aid the common law proceeding—as by preventing those acts by which the efficacy of the judg’nt is threatened, or securing the complainant, against them.—But—
*96 The demands set up in the bill, are of a purely legal character, as evidenced by the notes of the defendant. The fraud in the original transaction in which these notes were given, does not change the character of the debt upon the notes, from a legal to an equitable demand; but creates an equity to be restored to the consideration of the notes; which equity will be enforced upon a proper case. But the fact, that a vendor might go into equity to obtain restitution of his goods, if he had chosen to do so, and had identified them in the hands of his vendee, gives him no right to go into equity to enforce payment of the price, as secured by notes, when he neither seeks a restitution, nor shows that it can be made.
This conclusion, and the fact that neither the decree nor any part of the proceeding is based upon the right of the vendor to rescind the sale and be restored to his goods, render it unnecessary to determine whether such right would be extinguished by an assignment of the notes given for the price of the goods, or would be transfered to the assignee.
The remaining ground of equity set up in the original bill, is, that after the first note was put in suit by petition and summons, but before judgment was or could be obtained, and before the second note became due, and therefore, before any action at law could be instituted upon it, the defendant had secretly removed his goods from his store house, and would, as the complainants believed and charged, either remove them out of the country, or sell them and pocket the price, leaving these and other debts unsatisfied.
Upon these statements, the following questions arise:—
1. Did they give jurisdiction of the case, as to the note on which suit had been commenced, and if so, to what purpose and extent?
2. Did they give jurisdiction as to the note which was not due, and if so, to what purpose and extent?
These questions, arising on the face of the bill, and *97 touching the power of the Chancellor in taking the first steps upon it, are unaffected by the provisions of the subsequent statute, approved the 15th of February, 1838, which authorized the proceeding by attachment, &c. on facts such as are now under consideration.
Where the allegation in a bill, upon which a seizure of the deft’s goods is prayed for, is in the alternative,—that compt. fears deft, will either remove the goods out of the country, or sell them—unless the fear of either of those acts, would of itself authorize the proceeding, the allegation will be insufficient.
I. Without intimating what would be the effect of the statute in a case arising under it, we think it may be safely asserted that, independently of its operation, the facts above stated would furnish no ground as to the case which had already been carried into the legal forum, for translating it wholly and for all purposes, from that, into the equitable forum. The demand being purely legal, the remedy at law being actually in progress, the subsequent facts being such as could have no other operation than to endanger or defeat the ultimate efficiency of the legal remedy—it seems to us, that the utmost effect which any such facts could have, in confering jurisdiction upon the Chancellor, without breaking down the established limits which divide the equity from the common law jurisdiction, would be to authorize his interposition for the purpose and to the extent of preventing the acts by which the efficacy of the legal remedy was threatened, or of securing the complainant against their consequences, and thus aiding the common law proceeding. We can find no reasonable ground, and are acquainted with no precedent, for extending the Chancellor’s jurisdiction in any such case, beyond the exertion of his auxiliary powers.
But the question arises whether, in this case, the statement of the bill is such as authorized the exertion even of these powers. And here it is to be observed, that the statement being in the alternative, ‘that the defendant will remove his goods out of the country, or dispose of them and pocket the proceeds, so that his creditors cannot get at them; and the complainant not asserting which of the two courses he apprehends the debtor will pursue, (except so far as his subsequent statements may be considered as rather indicating that he fears the latter,) unless the statement of either alternative would be sufficient to authorize the interposition of the Chancellor, the statement of both cannot. And to show that either one of the statements would be insufficient, will show *98 that the case is not brought within the ancillary, and, a fortiori, not with the entire jurisdiction of the Court of Equity.
To sustain a bill to subject a debtor’s effects to the payment of a debt it must appear that he is a non-resident, or that an execution against his estate, has been returned nulla bona; one of these allegations, it seems, must be made to give the court jurisdiction, or at least, to justify a final decree.—Anallegation that comp’t. believes that deft. (against whom he has a a suit depending, for a debt,) will, by the sale or removal of his property, place it beyond the reach of legal process, is not sufficient to authorize the attachment of a resident debtor’s goods. The chancellor will not interpose to prevent him from selling them within the state; & tho’ there might be an order, upon proper allegations, to prevent the removal, and detain the goods to be subject to an execution on the judg’t at law, an allegation in the alternative (that the debtor will sell or remove his effects,) will not justify even that. The allegation must be as direct and unequivocal as the statement required in an affidavit to hold a deft, to bail.
The complainants do not ask the aid of the Court to preserve, or to keep within the jurisdiction of the Courts of this State, the subject of any suit which they have brought at law. They sue at law as mere general creditors, having no lien or other specific right in the goods of their debtor; and they come into equity in the same character, praying that the goods may be attached and held subject to their debt, because they believe their debtor will either remove from the country, or sell them, and pocket the proceeds, with a view and effect of defeating the collection of their debt.
The strictness with which this Court, in various decisions, has held attaching creditors to a compliance with the requisitions of the statutes on the subject, by showing, either that their debtors were non-residents, or that judgments had been obtained and execution thereon returned “nulla bona,” declaring, in some of the cases, that for want of these allegations, the proceedings were coram non judice, (Wooley vs Stone, 7 J. J. Marsh. 302,) strongly implies that the want of these circumstances could not be supplied by other facts, at least to the extent of authorizing a final decree. Nor have we been able to find, in the decisions of this Court, any sanction for the interposition of a Court of Equity in aid of a mere pecuniary demand asserted at law, so far as to attach the goods of a resident debtor, who has been sued at law, on the allegation, either that he will remove, or that he will sell them out of the reach of his creditors, or of legal process. It has been frequently been decided, that the fraudulent alienation of the debtor’s property, does not authorize the Chancellor to take jurisdiction of the case before judgment. Scott vs McMillan, 1 Litt. 302.
In the case of Wiggins vs Armstrong, (2 John. Chy. Rep. 144,) Chancellor Kent, after an examination of the English, authorities, dissolved an injunction which he had granted on the allegation-that the defendant, against whom the complainant had commenced , an action at law, had voluntarily, and without consideration, given *99 judgments for large sums to other persons, to defraud the complainant. The rule which he deduces from the authorities, is, “that the creditor must have completed his title at law, by judgment and execution, before he can question the disposition of the debtor’s property.” The reason for the rule, as he expresses it, is that, to permit such an interference, “would lead to an unnecessary, and perhaps, a fruitless and oppressive interruption of the debtor’s rights.” And he concludes that, unless the creditor has a certain claim upon the property of his debtor, he has no concern with his fraud.
It is true that, in the subsequent case of Porter vs Spencer, 2 John. Ch. Rep. 169, the same Chancellor, not without hesitation, granted the writ of ne exeat, against a defendant who had been sued and held to bail at law, on the allegation that he and his bail were about to remove permanently from the state, the one having sold his effects, and the other intending to remove his from the state. In this case, however, there was no interference before judgment, with the right of the defendant to dispose of his. goods as he thought proper within the state, and nothing more in effect than supplying that security which the complainant had taken in the pursuit of his common law remedy, but which was about to fail entirely, by reason of the intended removal of the bail with his effects.
This last case might perhaps furnish some authority for interposing to supply the omission to take bail in the action at law, upon the ground of having, subsequently discovered the intention of the debtor to remove his effects from the State. The utmost purpose and extent of which interposition, would be to secure the production of the effects to answer the judgment which might be obtained, by seizing and retaining them in the custody and subject to the order of the Court, unless bond should be given for their production. But this case furnishes no authority for seizing the debtor’s effects, on the allegation that he will sell them and pocket the proceeds; while the case of Wiggins vs Armstrong is a direct authority against such a procedure, which, together with the implied negation of it, by the class of cases in this Court, before alluded *100 to, leads us to the conclusion-supported, as we think, by the general doctrines and practice of the Court of Equity—that this latter branch of the statement in the bill, did not furnish sufficient ground for the attachment; and consequently, that whether the complainants’ belief, if it had been positively asserted, that the defendant would remove his goods from the country, would or would not have been a sufficient ground for the attachment, the alternative statement that he would either remove his goods, or sell them &c. was not sufficient. Such an alternative statement would not have authorized the requisition of bail in the action at law. And although the power of the Chancellor, if properly invoked, might be exercised with greater energy and efficiency in supplying the omission to take bail, we think the same ground should exist, as the basis of his action, as would have been required in making out a case for bail in the first instance.
Query—whether where two debts exist, one due, the other not, & good ground is shown, by bill in ch’y, for a seizure of enough of the goods of the debtor, to satisfy a judg’t. about to be recovered on the debt due—the chancellor can go further, and seize enough to satisfy the other debt also.
Besides the allegation, in an attachment bill, of a judg’t. and return of nulla bona against the deft. or that he is a non-resident, it must appear that there are effects of his within the jurisdiction, on which the chancellor can proceed in rem.— So—
*100 II. Without deciding whether, if sufficient ground had been made out for the interference of the Chancellor in aid of the action commenced upon the first note, he might not, in his discretion, have provided for the ultimate security of the other note, or of any judgment which should be obtained upon it, by a seizure of sufficient property to answer the whole demand—we think it entirely clear that, if the case made out in the bill, was insufficient to authorize the attachment for the security and payment of the first note, it was insufficient to authorize any proceeding in aid of the second note, which was not due. The single fact that it was not due, and therefore could not be put in suit at common law, gave it no advantage over the other note, and did not of itself constitute a ground of equity jurisdiction, either partial, or to the extent of the whole subject.
With regard to the amended bill, its allegation of a judgment and execution with the return of “nulla bona,” on the first note, would be a sufficient ground of jurisdiction as to that part of the demand; and the allegation of the defendant’s permanent removal from the state, would be sufficient as to the entire debt, if, in addition to these allegations, it were shown that the defendant had left any effects in this State, upon which the Chancellor could act. *101 But, so far from showing this, it states that he had disposed of every thing except the levy under the attachment, and the bond executed to obtain restitution of the attached goods. And obviously a levy which has been released by the execution of a bond, not for the forthcoming of the property, but for the performance of any decree which might be rendered upon the bill, does not, either in idea or in reality, constitute, or even represent, effects of the debtor, so as of itself to be either the subject of action, or the basis of jurisdiction against the debtor.
Goods were seized under a chancellor’s order but (in pursuance of the order) were restored to the def't. upon his giving bond with security, to satisfy the decree; and the comp’t. afterwards obtained judgt. for his debt, and the ex’on was returned nulla bona, as he showed by an amended bill; but as he also shows, the deft. had, in the mean time, taken all of his effects out of the state, there can be no decree, as there is nothing left on which the chancellor can act in rem; nor can the bond (to satisfy the decree not to restore the goods) be considered as representing effects of the debtor, or afford any basis for a decree.
The amended bill, therefore, does not show any sufficient ground of equity jurisdiction as to either of the notes. And although it were admitted that, if the attached effects had remained in the possession of the Court, though wrongfully seized at first, the Court might, in consequence of subsequent facts, have acquired rightful jurisdiction over them, and might have decreed their subjection to the satisfaction of both notes; or, if it should be conceded that the taking of a forthcoming bond, or bond for holding the goods subject to the order of the Court, might, by a fiction, have been considered as equivalent to the retention of the goods themselves in the hands of the Marshal, and as keeping them potentially within the power of the Court, and as thus furnishing, in connection with the facts stated in the amended bill, a basis for its decreeing that the property should be produced and sold: yet, as the goods were restored without retaining any lien upon them in fact or in contemplation of law, and as, upon the allegations of the bills and. the facts appearing in the record, there were no effects of the defendant within the control or reach of the Court, there was no basis for any decree in rem., and in fact, there was no such decree.
Had the Court, then, any jurisdiction to render a personal decree against the defendant? It has already been shown that it had not, upon the facts stated in the original bill. It certainly had not upon the ground of insolvency or non-residency, or of the sale by the defendant, of his own goods, upon which there was no lien; which matters appear in the amended bill; and as it cannot be admitted that the bond for the performance of the decree, confered *102 any right to pronounce a decree which the pleadings and facts did not authorize, we conclude, upon the whole record, that the Chancellor had no jurisdiction to render the decree which has been rendered, or any other final decree.
Wherefore, the decree is reversed, and the cause remanded, with directions to dismiss the bill.