## REESE & HEYLIN v. BRADFORD, ET AL.

1. Without the aid of the statute of February, 1846, before a party can go into a court of equity, to enforce the collection of a simple contract debt, he must establish a trust in his favor, upon the effects he seeks to subject to its payment. The fact that the party against whom the relief is sought, has removed to another State, will not give the court jurisdiction of a purely legal demand.

2. Partnership creditors, as such, have no *lien* on the partnership effects, until in the case of land, they have obtained a judgment, and in respect to personalty, have execution issued. The *lien* which the partners themselves have, in the partnership effects, for the payment of the partnership debts, may in some cases be made available in favor of creditors, by their being subrogated to the rights and equities of the partners themselves.

3. One partner, may sell and dispose of the effects of the firm to his copartner, and if the sale is fair, it will vest the exclusive title in the copartner. If no *lien* is reserved by the retiring partner, none can be asserted by the creditors of the firm.

Writ of Error to the Chancery Court of Macon. Before the Hon. D. G. Ligon.

THE plaintiffs in error filed their bill, in behalf of themselves, and all the other creditors of the firm of Thomas & Hunter, who would make themselves parties to the same as complainants, and would bear their proportion of the expenses thereof. They alledge, that Thomas & Hunter commenced business in Tuskegee, as partners, in March, 1844, did an extensive business, and realized good profits. That in March, 1845, they went to the north, and purchased extensively, goods suitable to the market, and there purchased of complainants to the amount of $686 89. That in September, 1845, they again made further purchases of complainants and others, and on the 21st of September, 1845, executed to complainants their three several promissory notes, two for $686 87 each, and one for $680, making the whole amount of indebtedness $2,053 74.

The bill further alledges, that the goods purchased by Thomas & Hunter of the various houses in the northern cities, and which remain unpaid, amount to about $22,000. That Hunter represented himself and his partner as possessed of real estate, and means ample to pay those debts at the time of the purchases, and which were untrue, and that at the time of making said purchases, they were insolvent. That on the 12th of December, 1845, and in furtherance of the original fraudulent intent of Hunter & Thomas, the said Hunter, in consideration of $10 expressed to be paid by said Thomas, and the further covenant to preserve him harmless on account of the outstanding liabilities of the firms of Hunter & Thomas, Harvey King & Co. and John H. Thomas & Co., assigned all his interest in the stock in trade, goods, debts, accounts, &c. in said firms, to said Thomas. That on the 15th of January, 1846, the said Thomas made an assignment to one Joseph H. Bradford by deed, of the stock of goods, debts, accounts, &c. which were of said Hunter & Thomas, amounting in the aggregate to over $22,000, together with certain real and personal estate belonging to said Thomas, which they charge is not worth more than $8,000; which conveyance was in trust for certain preferred debts of

said Thomas, amounting to about $11,000, and which is enlarged by several debts of Hunter & Thomas, but which are denied to be *bona fide*, amounting to about $10,000. That after paying the expenses of said assignment, the said two sums of preferred debts, which amount to about $22,000, the complainants' debt is permitted to come in *pro rata* with other Philadelphia and New York creditors, to receive the balance. That the possession, use, and enjoyment of the personal property, was secured to the said Thomas, for a period of six months, by the terms of said deed. That Bradford is authorized to sell the goods, either at public or private sale. That he has taken upon himself the execution of the trust, and is proceeding to sell the property, and collect the debts. The bill charges, that Hunter & Thomas entered into business, knowing they were insolvent, and to defraud complainants and others, by turning the goods and capital over to others, and particularly to the trustee.

The bill charges, that the assignment of Hunter to Thomas, was fraudulent, and was executed to enable Thomas to perfect the fraud on complainants, and his other creditors, and to enable him to appropriate the effects of the firm to his private debts. That the assignment by Thomas, to Bradford, was contemplated at the time of the assignment by Hunter to Thomas, and was executed with the intent to defraud complainant and other creditors. The bill charges that many of the debts classed as preferred, are simulated and fraudulent, and that the trustee, from a long acquaintance with the parties, knew them to be so. The bill further charges, that Thomas has withheld and applied to his own use, some of the most valuable debts due the firm; that some of the debts of complainant are not yet due. That the trustee is proceeding to dispose of the stock of goods, and collect the debts, and unless he is restrained, the whole amount will be lost to complainants. That Hunter and Thomas are insolvent, and Thomas has removed to the State of Georgia. That said Hunter & Thomas, and the trustee, have held out false representations to the creditors, in the situation of complainants, that if they would become parties to the assignment, their debts would be paid, and that this was done to enable the trustee to go on and collect the debts,

and dispose ef the property and effects of the firm. The bill prays that the trustee be enjoined from further intermeddling with the assets of the firm of Hunter & Thomas, and that these assets be applied to the debts of the firm. That the deeds of assignment be declared void. That Bradford be decreed to account for all he has received of said assets. The bill was amended, but in nothing that alters the equity of the parties complainant.

The creditors named in the deed, whose debts are disputed by the bill, answer it, alledging that the debts are *bona fide*.

Bradford, the trustee, also answers, and admits that Hunter & Thomas, as partners, carried on business at Tuskegee; that they purchased goods in Philadelphia and New York, but knows nothing of the amount of their purchases, nor of their profits; nor does he know of the fraudulent design of Hunter & Thomas, in the purchase of the goods, nor in the assignment by Hunter to Thomas, and does not therefore admit the fraud. Admits that Thomas made an assignment to him, on the 15th day of January, 1846, of the stock of goods, notes, debts, &c., and that they were of the goods, debts, &c. formerly belonging to Hunter & Thomas, but respondent has not made any collection of them. That said Thomas also assigned to him, real and personal estate that belonged to him, of the value of twelve thousand dollars, as property usually sells, and that respondent has undertaken to execute the trust, and was proceeding to sell the property, and make the payments according to the deed of trust, when he was restrained by the injunction in this cause.

The answer further states, that the clause in the deed of assignment, allowing a portion of the property to remain with Thomas for six months, was suggested by respondent and his counsel, and was intended for the convenience of the respondent, as he lived some fifty miles distant from the residence of Thomas. The respondent denies that there was any understanding between Hunter, Thomas, and himself, for some time previous to the deed of assignment to him, to execute the same. Denies that the assignment made by Thomas to him, was conceived in fraud, or intended to enable Thomas to perpetrate a fraud on complainants, or any

Reese & Heylin v. Bradford, et al.

one else ; or to enable Thomas to appropriate the partnership effects of Hunter & Thomas to the individual debts of Thomas. Denies all knowledge of any fraud in the assignment from Hunter to Thomas, and denies that he had any agency in it. That the debts preferred are *bona fide* debts, and due, so far as he knows or believes. Denies that he knew of the insolvency of Hunter & Thomas until within a few days before the assignment by Thomas to him was executed. That he has been selling the stock of goods, and endeavoring to collect the debts due the firm, for the purposes expressed in the deed. Denies that he ever overrated the value of the trust property, to induce the creditors to accept the trust. Denies all fraud on his part, or that there was fraud in the execution of the deed by Hunter to Thomas.

Hunter also answered the bill ; admits that he made purchases of goods in New York and Philadelphia, and executed notes, but denies all false or fraudulent representations as to his, or his partner's wealth ; or that any fraud was intended in the purchase ; or that the purchases were made without the intention of paying for the goods. Admits that he executed the assignment of his interest to Thomas, about the 12th December, 1845, but denies that it was done in pursuance of any fraudulent intention, previously formed, or for any fraudulent purpose whatever. Admits the execution of the deed of trust by Thomas to Bradford, and that he was called on and did sign it as a witness. Denies that he conveyed his interest to Thomas to enable him to perpetrate a fraud, or to enable him to appropriate the effects of the firm to his, Thomas's, individual debts. Denies that any of the preferred debts are simulated, or fraudulent, but states they are *bona fide.*

Thomas also answered—he admits the purchase of the goods of complainant, but denies that they were purchased with any fraudulent intent, or that they did not intend to pay for them. Admits the transfer of Hunter to himself, but denies it was made fraudulently ; he also admits the assignment from himself to Bradford, conveying the effects of Hunter & Thomas, and also real and personal estate, that

106

never did belong to the firm, but to respondent alone. That all the debts named in the assignment are *bona fide*. That the individual property assigned is of the value of about $12,000. The individual debts of Thomas secured by the deed, about $8000. Denies that the assignment of Hunter to him was fraudulent, or that it was intended thereby to enable him to perpetrate a fraud, or appropriate the effects of the firm to his individual debts.

The chancellor considering the remedy of the complainant full and adequate at law, dismissed the bill. This is now assigned as error.

BELSER and GUNN, for plaintiff in error.

1. There is enough on the face of the bill, to give a court of equity jurisdiction, although filed by simple contract creditors. The complainants and Thomas the grantor, were non-residents, and this independent of the partnership lien on the partnership assets, is sufficient. Lucas, et al. v. Atwood, et al. 2 Stewart, 381; Ib. 383; Acts of 1846, p. 17; Kirkman v. Vanlier, 7 Ala. 226; Lawton v. Levy, 2 Edwards' Ch. 201; Scott v. McMillan, 1 Litt. 305; Jackson v. Cornell, et al. 1 Sanford Ch. 353; Miller v. Davidson, 3 Gilman, 523; Brown v. McDonald, 1 Hill Ch. 301; Winston v. Ewing, 1 Ala. 129; Moore & Co. v. Sample, 3 Ala. 319; Christian v. Ellis, 1 Grattan, 396; 3 Kelly's Georgia Rep. 1 case.

2. The deed from Hunter to Thomas, in connection with the equitable right of their creditors, to have satisfaction 'out of the partnership effects, created a trust for the benefit of the said creditors, without preference, either at law or equity, and Thomas must be held as their trustee in the premises, and Bradford had notice of the trust, and therefore cannot defeat it. Brewster v. Lane, 4 Conn. 540; Devereaux v. Fowler, 2 Paige, 400; McCauly, et al. v. McFarlane, 2 Dess. 239; Toppliff v. Vail, Haw. Ch. 340; McKenzie v. Jackson, 4 Ala. 230; Wood v. Dummer, 3 Mason, 311; Robbins v. Easly, 1 Smede & Mar. Ch. 262; Egbert v. Wood, 3 Paige, 517.

3. The deed from Thomas to Bradford, according to the

facts of the case, shows an attempt on the part of an insolvent firm and a third person, to withdraw co-partnership funds from the reach of joint creditors, to satisfy individual debts of one of the partners. This cannot be done. It is going far beyond that honest preference of creditors which the law allows. Such assignments should not be enlarged so as to give new and dangerous facilities. Jackson v. Cornell, 1 Sandford Ch. 348; Yale v. Yale, 13 Conn. 185; Weed v. Richardson, 2 Dev. & Battle's Law, 536; Freeman v. Finnall, 1 S. & M. Ch. 623; Lovejoy v. Bowers, 11 N. Hamp. 404.

4. The instrument and evidence, aside from the idea of a trust for joint creditors, discloses a dealing for the benefit of Thomas, an insolvent grantor, which cannot be explained in the manner attempted. The discretion given to the trustee is a dangerous one, and for the benefit of the grantor, and the deed is a general assignment, not a mere mortgage. Ashurst v. Martin, 9 Porter, 566; Gazzam v. Poyntz, 4 Ala. 374; Bank v. Borland, 5 Ala. 531; Ticknor v. Wiswall, 9 Ala. 305; Garland v. Rives, 4 Ran. 282; Hart v. Crane, 7 Paige, 37.

5. According to the terms and reservations contained in the deed, all the creditors should have assented to it before the filing of the bill. The assent of one *cestui que trust* will not validate a deed which expressly or by implication requires the assent of others. Hodge v. Wyatt, et al. 10 Ala. 271; Pinkard v. Ingersoll, 11 Ala. 9.

6. All the circumstances go to show, that the transaction throughout, is a distinct one, and that it should not be upheld in a court of equity. The large purchases made by Thomas and Hunter in 1845—the time when the notes given for the goods were to fall due—the sale from Hunter to Thomas, and then from Thomas to Bradford, and the short period which elapsed between these transactions, show it to be a case of fraud. The case is materially different from the following, where the second class of creditors of the debtor trusted him on the faith of the goods. There was too much hot haste in this matter, to be legal or fair, and the deed on its face discloses the true transaction. Toppliff v. Vail, Haw. Ch. 341; Parish v. Lewis, Freeman Ch. 299.

7. After the dissolution of a co-partnership, one partner cannot, under his seal alone, assign the partnership effects, to trustees for the benefit of preferred creditors. Egbert v. Wood, 3 Paige, 18; Story on Part. 145-6-7-8-9-50; case of Anderson v. Tompkins, 1 Brock. 456.

8. It was not necessary for Bradford to be charged with notice of the fraud. He stood as a man would stand with a quit claim deed, affected with notice, and there can be no doubt, from the facts, that Thomas intended a fraud. See Walker, et al. v. Miller & Co. 11 Ala. 1067; Frow & Ferguson v. Downman, Ib. 880.

9. As to the *bona fides* of the transaction, the deed from Hunter to Thomas, and from Thomas to Bradford, are equally affected. No money was paid in either case by the grantees to the grantor.

DARGAN, J.—The first question to be examined is, whether a court of equity has jurisdiction under the facts alledged in the bill, to grant the relief sought by it?

The jurisdiction is attempted to be maintained, first, upon the ground that Thomas, one of the debtors, has removed from the State of Alabama, and now resides in the State of Georgia, and is insolvent. It is true, that if a party is not within the jurisdiction of the court, a court of equity will sometimes proceed against those who are, and afford relief, if it can be done consistently with the merits of the case, and the rights of the absent parties. See Story Equity Pl. 80; 2 Mason's Rep. 96; 7 Cranch, 69; 3 Ib. 220; 2 Atkins' Rep. 510.

But it is a well established rule, that if the parties absent from the jurisdiction of the court, are to be active in the performance of the decree, and are not mere passive objects of it, then a court of equity cannot proceed without having them before the court as parties, and if this cannot be done, no decree can be rendered. See Mit. Pl. 30, No. N.; Story's Eq. Pl. 81; 2 Swanston's Rep. 278. These rules are applicable when the subject matter of the bill is purely of equitable cognizance; hence defects in the powers of a court of equity existed, for it was in many cases incapable of af-

fording relief, because the proper defendant was not within the jurisdiction of the court, although the rights of the complainant might be exclusively of an equitable character. This defect has been remedied by statute in this State, and indeed in all the States of the Union—and in granting relief against an absent defendant, who cannot be served with process, courts of equity derive their authority from statutes. And it is beyond doubt true, that the mere absence of the party from the jurisdiction of a court of equity, and upon whom no service can be effected, cannot convert a pure legal demand into an equitable one, or give a court of equity jurisdiction over a legal demand, unless such jurisdiction is conferred by statute. For it would be absurd to say, that if the demand be of equitable cognizance, no relief can be afforded, because the defendant is beyond the jurisdiction of the court, and cannot be served with process, but if the demand be purely legal, and the defendant is beyond the jurisdiction of the courts of the country, this gives a court of equity authority to grant relief. Hence we will inquire if the demand of the complainants is legal, or equitable, and in what cases our statutes authorized courts of equity to proceed and grant relief against absent parties, in those cases where the subject matter is purely of equitable cognizance. See the Heirs of Holman v. The Bank of Norfolk, 12 Ala. Rep. 428.

The complainants are simple contract creditors, and they do not seek to enforce the trust created by the deed of assignment to Bradford, but to set it aside for fraud, and to subject the effects to the payment of their debts. As they are simple contract creditors, before they can come into a court of equity to collect their debts, or remove obstacles interposed to their collecting them, they must show either a lien, or that they had obtained judgments at law, the collection of which they cannot enforce without the aid of this court. See 1 Paige, 305; 4 Johns. Ch. Rep. 296; 3 Leigh's Rep. 299.

It is true, that in Kentucky, the absence of a party from the State, is held to be a ground upon which a court of equity will take jurisdiction of, and enfore the collection of a sim-

ple contract debt, against property liable at law to satisfy it, but this jurisdiction is claimed by statute only.   See 5 Litt. 49; 9 Dana, 93.   And previous to the act of February, 1846, there was no statute in Alabama that authorized a court of equity to take cognizance of a mere legal demand, and enforce the collection of it against property liable to execution at law, on the ground of the absence, or non-residence of the defendant.   And in this bill is not filed under this act, nor in pursuance of its provisions, it can derive no aid from it.

The demand being a simple contract debt, and purely of a legal character, before the complainants can come into this court for its collection, they must establish a trust in their favor, upon the effects they seek to subject to its payment, and if they fail to do this, their bill is without equity.

It is contended, that the insolvency of the partners, and the transfer by Hunter to Thomas, creates a trust on the partnership effects, to pay the partnership debts; and as the complainants' debts are of that character, they are seeking to enforce a lien for their payment.

The partnership creditors, as such, have no lien on the partnership effects, for the payment of their debts; and they stand in respect to partnership property, as individual creditors do to the property of individual debtors, without having any lien thereon, until their debt is reduced to judgment, which will create a lien on *real estate*, and when execution is issued thereon, a *lien* is created on the personalty.   See Sto. on Part. 509, 510.   But as the partners themselves have a *lien* on the partnership effects, to pay the partnership debts, this *lien* may, *in many cases*, be made available in favor of the creditors.   But the equity, or *lien* of the creditors, is to be worked out through the partners themselves; and when they can by this *lien* reach the partnership effects, and subject them to the satisfaction of their debts, it is because they are considered as subrogated to the rights and equities of the partners themselves, and not as having any *lien*, or equity upon the joint effects, by virtue of their debts merely, independent of this equity of the partners.

Having, then, no *lien* by virtue of their debts merely, the partners may sell, and dispose of the effects of the firm as they please, or as individual debtors may, for a *fair* and *bona fide* consideration, and their sales cannot be set aside by the creditors. One partner may sell to his co-partner, and if the sale is fair, it will vest the exclusive title in his co-partner. See Story on Part. 510; Ex parte Ruffin, 6 Vesey, 119, 126; 11 Vesey, 3, 5, 8. If the consideration of the transfer be, that the partner buying, shall pay the debts, this will not, by force of the contract, raise a trust in favor of the creditors, because they (the creditors) derive their *lien* from, or through the partners; and if the retiring partner parts with his *lien*, by the terms of the contract, and takes the personal security of the other to pay the debts, it would be difficult to maintain the proposition, that a creditor could assert a *lien* through the retiring partner, by virtue of an act that extinguished the *lien* of the partner himself. See Story on Part. 510; Gow on Part. 238 to 241.

By the terms of the deed from Hunter to Thomas, all the interest, right and title of Hunter, passed to Thomas, and no *lien* was reserved by the terms of the contract in favor of Hunter. But he relied on the personal security of Thomas alone, for the payment of the debts. If this deed is valid, or *bona fide*, it cuts off the equity of Hunter, and of course the creditors could not assert a *lien* through Hunter in their favor, if Hunter had none.

The answer of the defendants denies all fraud, as well in the execution of the deed to Thomas, as in the deed to Bradford; and there is no evidence to show, that the deed of the 12th of December, executed by Hunter to Thomas, was without consideration, or fraudulent. Hence, the complainants have failed to show a *lien* in their favor, and their debts being simple contract debts, not reduced to judgment, they cannot come into this court to ask for their payment. Their remedy is at law, and to that forum they must be remitted.

This conclusion renders it unnecessary to examine the questions raised on the deed of assignment to Bradford. Let the decree be affirmed.

CHILTON, J., not sitting.