Calhoun, by her next friend, v. Cozens, et al.

---

CALHOUN, BY HER NEXT FRIEND, v. COZENS, et al.

1. The complainant alleged, that she was to hold certain slaves, which she claimed under a deed of gift, agreeably to a statute of Mississippi, for the protection of the property of married women. The terms of the act were not more particularly recited, but it was alleged that the slaves were given by the deed, to be held by the complainant to her separate use, benefit, &c. during life, and to the heirs of her body thereafter—*Held*, that the bill was not demurrable for the omission to state the provisions of the statute referred to, the more especially as the interest set up by complainant was alleged to be an estate to her separate use.

2. Where the separate estate of the wife is levied on to pay a debt of the husband, in default of any other remedy, a sale may be stayed by injunction.

3. Where a bill for an injunction is not regularly verified by affidavit, and its allegations are denied upon information and belief only, the injunction should not be unconditionally dissolved for the insufficient verification, but the Chancellor should direct that the complainant, or some one acquainted with the facts, should verify the bill in a reasonable time, and in default thereof, the dissolution be absolute.

4. Where the allegations of the bill for an injunction are positive, but the answer is a mere denial of them, upon information or belief, the answer does not warrant the dissolution of the injunction.

This cause comes here by appeal, from the Chancery Court sitting at Tuscaloosa.

THE appellant describing herself as the wife of Ewing F. Calhoun, filed her bill by her next friend, Alexander J. Calhoun, in which she sets forth, that on the 23d of June, 1840, in the county of Rutherford, in the State of North Carolina, Henry McAden, of the county of Caswell, in the same State, in consideration of love and affection, and the sum of five dollars, paid him by her, did give, grant and sell her, the following negro slaves, for life, viz: Jane, a woman about twenty-four years of age, (since which time she has been delivered of two female children) Phillip, Jack and Toney, each aged about twenty-four years. Which slaves the complainant alleges, she was to hold together with their increase, agreeably to a statute of Mississippi, (where she resided) passed for the protection of property, of which married women might become seized or possessed, whether by direct bequest, demise, gift, purchase or distribution, in their own name, and as of their own property. The complainant refers to, and makes part of her bill, the deed of gift of the slaves made by McAden, in which it appears that they are to be holden as aforesaid, during her life, " and at her death, to be equally divided between the heirs of her body."

It is further stated, that while the said slaves were in the possession of the complainant's agent, Simon Cockerel, who was removing them from North Carolina to her residence in Mississippi, an attachment at the suit of Jacob B. Cozens, returnable to the Circuit Court of Tuskaloosa county, in the State of Alabama, was on the sixth day of August, 1840, levied upon them by the sheriff of that county; that on the twenty-fourth of March, 1841, a judgment was rendered in that suit, against Ewing F. Calhoun, the defendant therein, for the sum of two thousand, four hundred and fifteen dollars and seventy-five cents, besides costs. The complainant alleges, that she tendered to the sheriff levying on said slaves, an affidavit of her right to the property, and a bond with surety, for the purpose of obtaining a trial of the right, but he refused to receive or recognize her claim, upon the ground that she was a *feme covert.*

The bill proceeds to state, that an execution has been issued against the property of Ewing F. Calhoun, upon the judgment

rendered.as aforesaid,.and levied by the sheriff of.Tuskaloosa, on the said slaves, all whom are advertised for sale on the first Monday in July, being the fifth day of that month. That they "were at the time of levying the attachment and execution, the *bona fide* property of your oratrix, and were given and granted to her by the said Henry McAden, to be held by her, to be used, enjoyed and possessed, for and during her natural life, for her own proper use, benefit and behoof, separately and exclusively, and at her death, to be equally divided between the heirs of her body begotten."

The complainant alleges the insolvency of her husband— her repeated solicitations to Cozens to desist from all proceedings against the slaves, with a view to their sale; and the expenditure.of a large.sum of money, in order to protect her interest. .. The bill prays that *subpœnas* may issue to the defendants, Ewing F. Calhoun, Jacob B. Cozens and Wm. Braly, the sheriff of Tuskaloosa, and that an injunction may be awarded to restrain the sale of the slaves. An injunction was accordingly granted on the 30th June, 1841.

At the foot of the bill, is an affidavit, as follows: "The State of Alabama, Tuskaloosa county. Personally appeared before me, E. M. Burton, an acting justive of the peace, in and for the county aforesaid, Alexander J. Calhoun, who being duly sworn, deposes, and on his oath doth say, that the facts as they stand, stated in the foregoing bill, so far as they depend on his own knowledge, are true, and so far as they are derived from the knowledge of others, he believes to be true. Sworn to and subscribed before me, this the 30th day of June, one thousand eight hundred and forty one. ALEX. J. CALHOUN."

E. M. Burton, justice of the peace.

The defendants, Cozens and Braly, only have answered.— The former admits the proceedings on attachment at his suit, against Ewing F. Calhoun, the recovery of a judgment, the issuance and levy of an execution on the slaves, and an advertisement of their sale; substantially as alleged in the bill. But he denies, upon *information and belief*, that the slaves in dispute, are the property of the complainant, that there is any relationship, or even acquaintance, existing between Henry McAden and herself—asserts upon *information: and belief*, that the slaves are, and were at the time the deed exhibted with the bill

was executed, the property of her husband, and that the deed from McAden was a mere device of Ewing F. to defraud his creditors, and to secure the property to his wife and children. Admits that Ewing F. has not the visible means to pay his debts— knows nothing of the amount of complainant's expenditures, in resisting a sale of the slaves; denies that the complainant, or any one representing himself as her agent, ever applied to him to cease his efforts to subject them to the payment of his judgment. The answer sets forth other matters, which as they are not noticed by the Court, need not be here stated.

The answer of Braly admits the levy of the attachment on the slaves, the offer of the complainant to make affidavit and execute a bond, with surety, in order to try the right of property, and his refusal to give up the negroes to her, in consideration of such a step being taken by her, on the ground that she was a feme covert. He avers that his refusal to admit the claim of property, was afterwards approved by the Court, to which the attachment was returned; that all his acts in regard to the slaves, were done under lawful authority, in virtue of his office, and not with an intention to vex or harrass the complainant, and prays that his answer may be regarded as a demurrer to the bill.

At the first term after the filing of the bill, the defendants, Cozens and Braly, moved to dismiss the same as to Braly, and to dissolve the injunction upon the answer of the former, and for the insufficiency of the affidavit accompanying the bill. The chancellor dissolved the injunction upon the ground, that the affidavit did not sufficiently verify the bill, and dismissed the same as to Braly.

Peck and Clark, for the appellants.
Wm. B. Martin, for the appellee.

COLLIER, C. J.—It is insisted that the bill is defective in not reciting the provisions of the statute of Mississippi, referred to in the deed from McAden to the complainant. The bill would certainly have been more technically accurate in the statement of the case, if it had been thus framed, but the want of technicality in this respect, is not a fatal objection; for the omission to recite the act, is cured by the allegation, that the slaves in question were *bona fide* the property of the complai-

nant, at the time, the defendant's attachment was levied upon them—were given to her by "Henry McAden, to be held by her, to be used, enjoyed and possessed for, and during her natural life, for her own proper use, benefit and behoof, separately and exclusively, and at her death, to be equally divided between the heirs of her body begotten." This statement sufficiently indicates that the estate of the complainant in the slaves, was separate from, and exclusive of the control of her husband, and all other persons during her life, and may be regarded as explanatory of the effect of the statute of Mississippi, upon the deed of gift, under which she claims.

The equity of the bill consists in this, the separate property of the wife has been levied on, by legal process, and is about to be sold to pay the debts of the husband, and the only means by which such a result may be prevented, is an injunction to restrain the sale. The mere statement of the gravamen of the complaint, shows, that the case is one which chancery should entertain.

In respect to the verification of the bill, the eighth section of the act of 1823, "to regulate proceedings in chancery suits," (Aik. Dig. 288,) enacts that "all answers and bills for injunction, and writs of no exeat, shall be sworn to, before any clerk of a Circuit Court, Judge, or Justice of the Peace." It is not objected, that the bill is sworn to by the next friend of the complainant, but it is insisted that the affidavit does not affirm the truth of a single fact put in issue; while the allegations of the bill are made by the complainant, the affidavit merely declares that they are true, so far as they depend on the knowledge of the next friend, and a belief of their truth, so far as they are derived from the knowledge of others. Such, indeed, is the frame of the bill, and the manner of its verification. It must be admitted that the affidavit is an unusual one; it may be literally true, without sustaining, to any extent, the truth of the bill; for it does not declare that the next friend possessed a knowledge of the facts, or was informed of them by others who possessed such knowledge. But although the affidavit is thus defective, we cannot think that the injunction should, for that cause, have been unconditionally dissolved. The correct practice, it seems to us, in a case like the present, where the answer denies the statements of the bill, upon information and be-

lief, is to call upon the complainant, or some one acquainted with the facts, to verify them, and in default of a proper affidavit, after some reasonable time to be prescribed, then direct that the injunction be dissolved. True, the law does not prescribe the form of the *jurat* to a bill for an injunction, but the statute evidently contemplates such as is affirmative of the truth of its allegations, either upon knowledge, information or belief.

The injunction having been irregularly dissolved for the insufficiency of the affidavit, we must refer to the answer of the defendant, Cozens, to ascertain if it is such a denial of the equity of the bill, as authorised the order of dissolution. Upon a motion to dissolve an injunction, the Chancellor confines himself exclusively to the combination of facts set forth in the bill, out of which the equity of the case arises, and to the answer of the defendant to those facts. C. and Ohio Canal Company v. B. and Ohio Rail Road Company, 4 G. & Johns. Rep. 7. In Ward v. Bokkelen, 1 Paige's Rep, 100, it was held that an injunction will not be dissolved upon the answer of the defendant, unless it positively deny all the equity of the bill; and that a denial from information and belief, is not sufficient. Rodgers v. Rodgers, 1 Paige's Rep. 426; Apthorpe v. Comstock, Hopkin's Rep. 148; Roberts v. Anderson, 2 Johns. Ch. Rep. 204; Williams v. Hall, 1 Bland's Rep. 194. But in McFarland v. McDowell, 1 Caro. L. Repo. 110, it was considered, that an answer will be sufficient to dissolve an injunction, if it set forth circumstances disproving the allegations of the bill, although it do not positively deny them.

The answer of Cozens does not undertake to negative, with positiveness, the truth of the facts on which the injunction was awarded, but merely states circumstances upon information and belief, and declares that he is informed and believes the material allegations of the bill are untrue. Now, although the answer is special in its terms, yet, according to the authorities cited, it does not warrant the dissolution of the injunction.

Braly, as he had no interest in the controversy; and is not charged with a breach of official duty, and appears to have acted strictly in conformity to law, was an unnecessary party.—The dismissal of the bill as to him, was, therefore, proper, and the decree is thus far affirmed; but in other respects, it is reversed, and the cause remanded.