## McGOWN *vs.* SPRAGUE ET AL.

1.  Although the allegations of a bill are sufficient to bring the case within the act of 1846 giving attachments in chancery, yet, if the complainant fails to comply with its requisitions as to making affidavit and giving bond, his bill cannot be sustained under that act.
2.  When a partner purchases his co-partner's entire interest in the firm, undertaking to pay all the partnership debts, and afterwards absconds, leaving his individual debts and those of the partnership unpaid, a court of equity will re-invest the retiring partner with his original rights as partner, giving him a lien on the partnership assets for the payment of the partnership debts. (Ligon J. *dissenting*.)

ERROR to the Chancery Court of Tuskaloosa.

Heard before the Hon. JAMES B. CLARK.

THIS bill was filed by Henry McGown, the plaintiff in error, in behalf of himself and others, against his late co-partner, George Sprague, and others.

The bill alleges that the complainant and said Sprague, prior to the 4th day of February, 1850, were merchants and co-partners in the city of Tuskaloosa, doing business under the style of Sprague & McGown ; that on the 4th February, 1850, the said firm was dissolved, the complainant selling out to the said Sprague his entire interest in the concern, and the said Sprague agreeing to pay all of the debts due and owing by the said partnership ; that the goods on hand when complainant sold out his interest were worth about six thousand dollars, and the debts due the concern amounted to about twelve thousand dollars.— The bill sets out a list of the debts due by the firm at said dissolution, and also a list of said debts yet unpaid. It further alleges that, in the spring of the year after said dissolution, the said Sprague brought out from New York a new stock of goods, and mingled them with the old stock, but there yet remains distinguishable of the old stock, unsold, twenty-five hundred or three thousand dollars worth, and how many of the debts have been collected complainant cannot tell ; that said Sprague continued the business in his own name up to within about a month before the filing of the bill, when he left Tuskaloosa for New York, ostensibly to buy goods ; that the next day after he

reached New York, he left his hotel, and has never been heard from since, and complainant has good reason to believe, and does believe, that he has absconded for the purpose of avoiding the payment of his debts; that he has left no property behind, except the stock of goods on hand and the debts due to him from his customers, which, as complainant believes, are insufficient to pay his debts; that the goods on hand in the store, at the time said Sprague left, were worth, as complainant believes, about five thousand dollars more or less, left in the care of a clerk named John Cummings, aged about eighteen years; and that the said Cummings had that day closed up the store.

The bill alleges, on information and belief, that all or nearly all of the goods purchased by the said Sprague after the dissolution had been purchased on credit, and were still unpaid for; that if the goods be permitted to remain longer in the hands of Cummings, they will soon be seized by attaching creditors, and complainant fears greatly deteriorated amongst contending and conflicting creditors.

The bill prays that said Sprague be made a party defendant; that the bill be considered as filed in the complainant's own name, as well as on account of the creditors of Sprague & McGown and of the defendant Sprague, at least such of them as will make themselves parties to these proceedings; that a writ of attachment or seizure be issued, and the goods seized, with the books of the concern, and all the evidences of debt, and that the same be held subject to the further order of the court; that an account be taken, to ascertain what portion of the goods on hand belonged to the late firm of Sprague & McGown, and also what debts due to said firm remained uncollected; that the goods of the late firm of Sprague & McGown, if they could be ascertained, with such debts as were yet uncollected, due and owing to said firm, and such debts as have accrued to said Sprague by the sale of the goods of the old firm, be set apart and appropriated to the payment of the partnership debts of the said Sprague & McGown, and the balance to the individual debts of the said Sprague.

The bill is sworn to by the complainant, and an order for an attachment or writ of seizure is made, on the complainant entering into bond payable to the defendant in the sum of one thousand dollars. The bond was given, the attachment issued,

the goods seized and sold under a subsequent order of the court as perishable property, and the debts ordered to be collected.

Several of the creditors of the firm of Sprague & McGown, and also of George Sprague, intervene by petition, and make themselves parties to the proceeding under the prayer of the complainant's bill.

It seems that the register has in hand some nine thousand dollars, collected under the former orders in the cause. At the July term, 1852, the case was submitted for final decree, and for the distribution of the funds amongst the creditors. The Chancellor rendered a decree in the cause, of his own mere motion, dismissing the complainant's bill for want of equity.

The rendering of this decree is here assigned for error.

E. W. PECK, for plaintiff in error :

I. Before the passage of the act of the 5th February, 1846, this court held, in analogy to our attachment laws, that a complainant, in aid of his bill to enforce the payment of an equitable demand, might have, in a proper case, an attachment to seize and condemn the property of the defendant in the hands of a third person.—T. &. J. Kirkman v. Vanlier, 7 Ala. Rep. 226, 227 ; Davenport v. Bartlett & Waring, 9 Ala. Rep. 179.

This act is a remedial statute, and should be liberally construed. By it an attachment in chancery is given to enable a creditor, without first obtaining a judgment at law, to collect a legal demand against non-resident and absconding debtors, and also debtors who are fraudulently disposing of their property ; and by the eighth section of said act, the remedy is extended in favor of accommodation endorsers and securities, if their principal is about to remove, or is removing, or absconding, or conveying off his property beyond the limits of this State, or disposing of the same, with a fraudulent intent.—Pamphlet Acts 1846, pp. 17, 18.

II. Now, in disposing of this case the complainant's bill is to be taken as true, and, being so taken, I maintain, that on the dissolution of the partnership between the complainant and the defendant, Sprague, and Sprague's undertaking to the complainant, as purchaser of the partnership property, to pay the partnership debts, as to those debts, and as between themselves, the complainant is to be taken as the surety merely of the de-

fendant Sprague.—Waddington *et al.* v. Vredenburg, 2 John. Cases 227, 228 ; Sedgwick on Measure of Damages 307, *et seq.*

If three persons give a note for their joint debt, each is to be considered as regards the others as a surety with regard to two thirds, and as a principal with regard to one third ; and, if one be insolvent and another pay the whole debt, the third shall contribute a moiety.—Henderson v. McDuffie, 5 N. Hamp. Rep. 38.

The case of Reese and Heylen v. Bradford *et al.*, 13 Ala. Rep. 837, on which the Chancellor bases his decree, interposes no obstacle in the way of the complainant in this case, because his bill is filed under the act of the 5th of February, 1846, and as between himself and the defendant, Sprague, he is, under the facts stated in the bill, to be taken as the security of the said Sprague, as it regards the partnership debts ; he is entitled to relief by the very language of the eighth section of said act.

III. The equity of this bill may be maintained upon the principle that the complainant is entitled to have the credits of the firm devoted to the payment of the firm debts, although by the sale of the goods themselves the lien and equity of the complainant was gone, yet as to the credits the sale did not vest the defendant, Sprague, with the legal title, but an equity only, as to them the legal title still remains in the firm, and the firm as to them still continues for the purpose of their collection, and when collected, they ought to be applied to the payment of the firm debts ; this position is sustained by the authorities relied upon by the defendants cited from Story's Eq.

II. The equity of the bill may be maintained to prevent irreparable loss and mischief.

J. L. MARTIN, *contra:*

The bill is not framed under the act of 1846, as its allegations all show. Its whole scope and object is, to establish complainant's supposed lien on the partnership effects, derived from the existence of his former partnership with Sprague. It claims no debt against Sprague; it sets up a mere promise on his part to pay certain debts to other persons for which McGown was bound, and a failure to comply with his promise. Taking these allegations to be true, they only show a demand for unliquidated damages, recoverable at law.

The interposition of equity is invoked to secure complainant's supposed lien, in order that the goods may not be seized by attaching creditors, and in the struggle of creditors deteriorated, to the injury of complainant and others. This is wholly inconsistent with the course of an attaching creditor, who is seeking his debt through such means. Why this desire to preserve the goods from injury, if complainant claimed no other right in them than the payment of his debt by their sale?

The bill does not seek the goods and effects of Sprague generally, but is confined to the partnership effects, which complainant prays may be applied, not to the payment of the general creditors of Sprague, but to the creditors of the late firm of Sprague & McGown.

A bill framed under the act of 1846 must set up a debt due to complainant, or, under the eighth section, that complainant is endorser or surety for defendant to a particular amount, which, together with the existence of one of the causes for suing out an attachment, complainant must swear to, and must give bond in double the amount of the sum claimed. In all these particulars this bill is defective under the act of 1846.

GIBBONS, J.—The equity of the bill filed by complainant is attempted to be sustained by counsel on two grounds: first, under the statute of 1846, viewing the bill and the proceedings under it purely as a statutory proceeding; and secondly, it is insisted that the bill contains equity on its face independent of the statute.

Upon the first ground assumed, it is insisted that the relation which the complainant, McGown, held to the defendant, Sprague, after the dissolution of the partnership, and after the complainant had sold out his interest in the concern, was that of a surety for the payment of the partnership debts, and therefore the case falls directly within the eighth section of the act of 1846, and the complainant was authorized to proceed under the statute. This position we think well taken; but the bill does not seem to have been filed under that statute, as the proceedings under the bill are by no means in conformity with the act. The statute requires that the particular debt should be distinctly set out by affidavit, which is due to the complainant, or for which he is liable as security, and also that bond should

be given as in cases of attachment at law.—See section 3 of the act, p. 17, Pamphlet Acts of 1846. Neither the affidavit nor the bond seems to have been filed according to the requisitions of the statute; and, indeed, it does not seem to have been intended to be, at the filing of the bill, a proceeding under the statute. Where proceedings of this nature are authorized only by statute, the uniform decisions of this court are, that such proceedings, when taken, must be substantially conformable to the directions of the statute. These would seem to be too defective to be sustainable as such.

But it is insisted that the bill contains equity independent of the statute, and that upon the idea of preventing to the complainant irreparable loss and mischief. The chancellor, it would seem, considered the case made by the bill to fall within the case of Reese v. Bradford et al., 13 Ala. 837, and dismissed the bill for want of equity, of his own mere motion. We do not consider that case as entirely decisive of this. If the complainant had been a creditor of the firm of Sprague & McGown, or of Sprague individually, the cases would then have been analogous, and the case cited would necessarily have controlled this. In that case, it is distinctly laid down as a principle, and is well sustained by authority, that "partnership creditors have no lien on the partnership effects for the payment of their debts; and they stand in respect to partnership property as individual creditors do to the property of individual debtors, without having any lien thereon, until their debt is reduced to a judgment creating a lien on real estate, or until execution is issued on said judgment creating a lien on the personalty." Story on Part. 509, 510. Partners, however, have a lien on the partnership effects, to pay the partnership debts.—Ib. It is said, however, that as McGown had sold out his interest in the firm to Sprague, the partnership no longer existed, and the effects of the late firm became by the act of sale individual effects; and therefore the lien of McGown, as a partner, to have the effects applied to the payment of the partnership debts, was lost by said act of sale.—Reese v. Bradford et al., supra. This is doubtless true, and may all be conceded, and yet, we apprehend, the bill contains equity notwithstanding. When McGown sold out to Sprague, he did so on the agreement or undertaking of Sprague to pay the partnership debts, and to indemnify him

64

from all loss in consequence of said debts. Instead of performing the agreement, Sprague leaves the debts unpaid, becomes insolvent, and absconds, leaving also numerous individual creditors, who will, as complainant has the right to suppose, be anxious to realize their debts. Sprague's contract with him, then, not being performed, and circumstances having arisen by which its performance has become entirely improbable, has not McGown the right, as between himself and Sprague, to consider himself released from their contract, so far as it deprived him of a lien upon the partnership effects to have them applied to the payment of the partnership debts; and if the goods which he sold can yet be identified, and the debts which he assigned are yet uncollected, would not a court of equity reinstate him to his original rights, as a partner with a lien upon the partnership effects to have them applied as above stated? If these are correct propositions, then the bill contains equity in itself, independent of the statute. It sets out distinctly the contract of sale of the complainant's interest, the agreement on the part of Sprague to pay the partnership debts and hold the complainant harmless from all liability on account thereof, the failure of the said Sprague to perform the contract, the fraudulent absconding on his part with a view of avoiding the payment of his debts, and his insolvency. All these circumstances, taken together, we consider, give to the complainant an equity to be relieved from the effect of the contract of sale, so far as it deprived him of a lien upon the partnership effects to have them applied to the payment of partnership debts, and to be restored to his original rights as a partner with the lien above stated.—Carey on Part. 205; Deveau v. Fowler, 2 Paige 400; Kitchen v. Lee, 11 Paige 107.

It results from these views, that the decision of the chancellor in dismissing the bill for want of equity was erroneous, and his decree is therefore reversed, and the cause remanded, with instructions to proceed with the cause as upon a bill containing in itself a valid subsisting equity. It is further ordered that the costs of this court be taxed to the defendant Sprague, to be paid out of the funds in the hands of the register in the court below.

LIGON, J.—I will briefly state my reasons for dissenting from the opinion of the court in this case.

In the first place, I do not consider the allegations of the bill, and the manner in which it is filed, sufficient to bring it within the act of 1846, (Pamphlet Acts, 1845-6,) and consequently it is within the rule laid down by this court in the case of Reese & Heylin v. Bradford *et al.*, 13 A. R. 837, and was rightly dismissed by the Chancellor, unless it can derive some aid from the general lien which each partner has upon the partnership effects for the payment of the debts of the firm.

2. It is apparent from the face of this bill, that McGown and Sprague had fully dissolved their partnership several months before it was filed, upon an agreement that Sprague was to take the effects of the firm and pay all its debts. Upon making this agreement McGown retired from the partnership, and ceased to interfere in its concerns. Sprague continued the business in his own name, and paid a large portion of the firm debts. No fraud on the part of Sprague, either as to McGown, or the creditors of McGown & Sprague, in the purchase from McGown, as I understand its allegations, is charged in the bill. If under these circumstances, McGown has no lien as a partner, it is clear to my mind, that neither he nor the creditors of Sprague alone, or of McGown & Sprague, who have not reduced their claims to judgment, have the right to come into a court of chancery to charge the effects of Sprague with their payment.

The rule is, that when a firm is dissolved, by one partner selling his entire interest in the partnership effects to his co-partner without fraud, and the selling partner retires from the firm on an agreement that the remaining partner shall pay the debts, the latter becomes the absolute owner of all the effects, discharged from the lien of the retiring partner.—Story on Partnership § § 358, 359 ; Collyer on Partnership 603 to 605 ; *Ex parte* Ruffin, 6 Ves. 119, 124, 127 ; *Ex parte* Williams, 11 Ves. 3, 8 ; Campbell v. Miller, 2 Swanst. R. 552, 557 ; *Ex parte* Fell, 10 Ves. 347 ; *Ex parte* Peele, 6 Ves. 602.

As the retiring partner has no lien, the creditors of the firm, as it stood before his retirement, have none ; for all liens which the creditors can have in case of dissolution must arise out of that of the retiring partner ; and as we have seen that McGown has none, neither have the creditors of the firm from which he had retired. As a general rule, creditors, as such, have no lien

on the effects of a partnership for the payment of their debts.—
See authorities, *supra*.

Both McGown and the creditors which he has joined with him
in his bill, can be regarded in no other light than creditors
at large, and in that capacity are forbidden to resort to a court
of equity for the collection of their demands.—Reese & Heylin
v. Bradford *et al.*, 13 A. R. 837.

For these reasons, I think, the decree of the Chancellor
should have been affirmed.