## SAUNDERS vs. CAVETT et al.

[BILL IN EQUITY FOR ATTACHMENT, INJUNCTION, &c.]

1. *Dissolution of injunction on answer.*—Where the answers deny all the charges and allegations of fraud, on which the prayer for an injunction is founded, the injunction is properly dissolved.

2. *Equitable attachment; affidavit that writ is not sued out to vex or harass.* When an equitable attachment is sued out by an accommodation endorser, on the ground that the principal debtor is fraudulently dis-

posing of his property, (Code, §§ 2954 *et seq.*; Session Acts 1855-6, p. 54,) the complainant must make affidavit, as in analogous cases at law, that the writ is not sued out for the purpose of vexing or harassing the defendant.

2. *Amendment of bill.*—Where the equity of a bill rests on a statutory equitable attachment, the failure of the complainant to make the necessary affidavit, denying an intention to vex or harass the defendant, is a substantial defect, which cannot be remedied by an amendment.

APPEAL from the Chancery Court of Perry.
Heard before the Hon. JAMES B. CLARK.

THE bill in this case was filed by Green B. Saunders, against James B. Cavett and William L. Saunders, as partners composing the firm of Cavett & Saunders, together with W. M. Conner, W. McD. Conner, and others. Its object was to set aside, as fraudulent, a deed by which said Cavett & Saunders conveyed all their stock of goods, &c., to said W. M. Conner; and to have the goods &c. sold, and the proceeds of sale applied to the payment of certain bills of exchange, on which the complainant was, as he alleged, an accommodation drawer for the benefit of said Cavett & Saunders. The prayer was for an injunction, an attachment, the cancellation of the deed, the appointment of a receiver, an account, and general relief. An attachment and an injunction were granted by a circuit judge, on the execution of proper bonds by the complainant. A joint answer was filed by the two Conners, and a separate answer by Cavett; each denying all the allegations of fraud, and demurring to the bill for want of equity; and they also interposed a plea, on the ground that the bill was fatally defective for the want of an averment on oath that the attachment was not sued out for the purpose of vexing or harassing the defendants. After filing their answers, the defendants moved to dissolve the injunction; and the complainant asked leave to amend his bill, by adding, with other averments, an allegation that the attachment was not sued out for the purpose of vexing or harassing the defendants; the proposed amendments being duly sworn to. The chancellor dissolved the injunction, and refused to allow

the bill to be amended ; and his decree is now assigned as error.

W. M. BROOKS, with whom were JOHN & CHAPMAN, for the appellant, cited *Calhoun v. Cozzens*, 3 Ala. 502; *Rives, Battle & Co. v. Walthall*, 34 Ala. 91 ; Session Acts 1857–8, p. 54.

E. W. PETTUS, *contra*, cited *McGown v. Sprague*, 23 Ala. 524 ; *Kirksey v. Fike*, 27 Ala. 383 ; *Smith v. Moore*, 35 *ib.* 76.

STONE, J.—The answers of the defendants fully and emphatically negative all fraud charged upon them, in the matter of the sale to, and purchase by them, of the goods and effects which were affected by the interlocutory injunction. The gravamen of the complainant's bill—the peculiar ground on which he rests his right to have these goods and effects seized, and the defendants restrained from disposing of them—is the alleged fraud in the sale from Cavett & Saunders to the Conners. This being denied, the injunction was rightly dissolved for that reason, if for no other.

[2.] But it is our duty to dispose of the questions raised on the attachment and its dissolution.

The present bill was filed under the Code, chapter 6, title 4, part 3, page 529, and the enlargement of the remedy therein provided, by the act approved February 15th, 1856.—Pamphlet Acts, 54. Section 2954 of the Code provides, that "writs of *ne exeat*, and equitable attachments, may issue on equitable debts and demands, under the same circumstances, and courts must observe in the issue of such writs, the provisions of courts of law in relation to bail and attachment writs, except so far as the same are altered by this Code." Equitable attachments had been provided for by the act of 1846, (Pamphlet Acts, 17,) and many of the provisions of that statute were continued of force by section 2956 of the Code.

By the act of 1856 it is declared, "that a writ of attach-

ment may be issued out of the court of chancery, on the application of any surety, endorser, accommodation drawer, acceptor, or maker, of any bond, bill, note, or other contract in writing, against the principal debtor, to be levied on the property or effects of the defendant, whether held by a legal or equitable title, whenever such surety, endorser, acceptor, maker, or drawer, could sue out an attachment at law, if he was a creditor of such principal debtor;" and that "the provisions of the statutes now in force, in reference to attachments at law, must be observed in the issuance of such attachments."

The complainant in this bill alleges, that he is an accommodation drawer for Cavett & Saunders,—the debt not paid at the filing of the bill; and hence, the entire equity of his bill rests on the act of 1856, copied above, and section 2954 of the Code.

This record contains no formal order dissolving the attachment; but the chancellor, and the counsel on both sides of the controversy, treat the case as if the attachment had been dissolved. We will also treat the question in the same light, and proceed to consider the appeal on that hypothesis.—See act of 1858, § 6; Pamphlet Acts, 230.

It will observed, that section 2954 of the Code declares that, in issuing equitable attachments, the *courts must observe the provisions of courts of law in relation to bail and attachment writs.* And the act of 1856 confers the right to issue attachments out of chancery, only when *such surety, endorser, acceptor, maker, or drawer, could sue out an attachment at law, if he was a creditor of such principal debtor;* further, that *the provisions of the statutes now in force, in reference to attachments at law, must be observed in the issuance of such attachments.*

It is objected by appellees, that in suing out the present attachment, the complainant did not observe the provisions of the statute now in force in reference to attachments at law. The particular ground of objection is this: The statute which authorizes the issuance of an attachment at law, in favor of a creditor, against a debtor who has, as is charged

Saunders v. Cavett et al.

in this bill, *fraudulently disposed of his property*, requires the plaintiff to make oath *"that the attachment is not sued out for the purpose of vexing or harassing the defendant."* Neither the bill, nor the affidavit in this case, contains that averment; and for this omission it is contended, that the chancellor rightly dissolved the attachment.

We agree with the chancellor, that the averment copied above was material. It was, at an early day, made a part. of the oath to be taken in suing out attachments at law, and has been steadfastly preserved through all the changing phases of our legislation on that subject. We discover in this language a nice legislative policy, in this, that notwithstanding a creditor may bring himself within the letter of the statute, still his conscience shall purge itself of all purpose to vex or harass, before he shall be armed with this extraordinary process of the law. Kindred questions under attachment laws have been considered, and have received the same solution which we give to this.—*Thompson v. Raymon*, 7 How. Miss. 186 ; *Page v. Page*, 2 Sm. & Mar. 266 ; *Hopkins v. Grissom*, 26 Miss. 143 ; *Taylor v. Smith*, 17 B. Mon. 536.

The case of *Conklin v. Harris*, (5 Ala. 213,) is not opposed to this view. The attachment in that case was sued out against a non-resident debtor ; and it is no part of the affidavit for an attachment on that ground, *that the ordinary process of law can not be served on the defendant.*—Clay's Digest, 54, § 3.

[3.] We do not understand the appellant as seriously controverting this proposition. He contends, however, that the chancellor should not have dissolved the attachment, without first giving him an opportunity to perfect the ground of his attachment by an amendment. In support of this proposition, he relies on *Calhoun v. Cozzens*, 3 Ala. 498, 502. The case cited certainly sustains the argument, unless a distinction can be taken between that case and this. We do not propose now to consider whether that case is reconcilable with a well settled rule of chancery law—namely, that when a bill, on which an interlocutory

injunction has been obtained, is amended, such amendment
is at the cost of the injunction, unless the court allowing
the amendment make an order for the continuance of the·
injunction.—See 1 Dan. Ch. Pr. 483–7. But there is an
organic distinction between that case and this. The bill
in the case of *Calhoun v. Cozzens* made a case for the exer--
cise of original equity jurisdiction ; namely, a proceeding
by a married woman, having no trustee, to protect her
separate estate from sale under an execution, against her
husband. The equity of the bill consisted, not in the
necessity for an injunction, but in the civil disability of the·
wife to maintain an action at law. Her rights, under the
circumstances, were maintainable alone in equity ; for she·
could sue nowhere else. The injunction was simply the·
means of giving effect to the·decree to be rendered, by·
arresting the erroneous proceedings of the law court. In·
this case, it is the attachment, properly issued, which gives·
the plaintiff a standing in court. Without that process, he
has no cause of action before any tribunal.—*Wiggins v.
Armstrong*, 2 Johns. Ch. 144 ; *Saunders v. Watson*, 14 Ala.
198 ; *Buford v. Francisco*, 3 Dana, 68 ; *Moran v. Dawes*,
Hop. Ch. 365.

In the case of *McGown v. Sprague*, (23 Ala. 524,) the
question was whether the bill conformed to the act of 1846,
as an equitable attachment. This court said, "Neither the
affidavit, nor the bond, seems to have been filed according
to the requisitions of the statute ; and, indeed, it does not·
seem to have been intended to be, at the filing of the bill,
a proceeding under the·statute. When proceedings of
this nature are authorized only by statute, the uniform
decisions of this court are, that such proceedings, when
taken, must be substantially conformable to the directions
of the statute."

In the case of *McKenzie v. Bently*, (30 Ala. 142,) the affi-·
davit and bill were sufficient, but the attachment was issued·
without any previous order or fiat therefor. This court·
held, that the proceedings were *void*, and that the court of·
chancery *did not*, and *never could*, have any authority to·

render any decree in favor of complainants under that bill. See, also, *Kirksey v. Fike,,* 27 Ala. 383 ; *Walthall v. Rives,* 34 Ala. 91 ; *Smith v. Moore,* 35 Ala. 76.

The result of our former decisions is, that although amendments of chancery pleadings are much encouraged in this State, yet, when the equity of a bill depends on a statutory attachment, if the sworn averments of the bill, or the affidavit, or the fiat or order, be substantially insufficient to uphold the jurisdiction, then the chancery court has not, and never can have, authority to render the decree prayed for ; and no amendment can retroact, so as to legalize and save an attachment previously issued without proper authority.—See *McReynolds v. Neal,* 8 Humph. 12.

The decree of the chancellor, in both aspects, is affirmed.