Reyburn v. Mitchell.

REYBURN, *Administrator*, v. MITCHELL *et al.*, *Appellants.*

DIVISION TWO.

1. **Partnership:** FIRM CREDITORS : PARTNERSHIP ASSETS : EQUITIES. A partner cannot transfer the firm property for the payment of his individual debts without the consent or acquiescence of his copartners.

2. ———: ———: ———: ———. Each partner has the right in equity to have the firm property applied to the payment of the firm debts, and through these equities existing between the partners the firm creditors derive the right to have the partnership assets appropriated to the payment of the firm debts in preference to the individual debts of the copartners.

3. ———: ———: ———: ———. The rights of the firm creditors to such preference being derived through the equities of the partners among themselves can exist only so long as the partnership continues.

4. ——: ——: ——: ——. The *bona fide* waiver by the partners of their equitable rights to have the assets of the firm first applied to payment of the firm debts necessarily destroys the derivative equities of the firm creditors.

5. ——: ——: ——: ——. The acquiescence of one partner in a mortgage by the other of the latter's "right, title and interest" in the property to secure an individual debt will not defeat the equity of the firm creditors to have the firm property applied to the payment of the firm debts.

6. ——: ——: ——: ——. While, after the dissolution of even an insolvent partnership by the sale and transfer of all its assets, the firm creditors cannot follow the property into the hands of the purchasers, yet the transaction must have been in good faith and not for a fraudulent purpose.

7. Practice: ASSIGNMENT FOR COLLECTION: TRUSTEE OF EXPRESS TRUST. One to whom demands against another are assigned for collection is a trustee of an express trust, and may sue in his own name, and on his death the suit may be revived in the name of his administrator, it not appearing that a successor in the trust has been agreed on or appointed.

8. Equity: LEGAL DEMANDS: CREDITOR'S BILL. The general rule is that, before a creditor can invoke the aid of a court of equity in the collection of his debt, he must reduce it to judgment and exhaust his legal remedies.

9. ——: ——: ——. The foregoing rule is applicable only to claims which are purely legal, and for the satisfaction of which the creditor has no lien or equitable claim upon specific property.

10. ——: COMPLETE JUSTICE. Where a court of equity has acquired jurisdiction of a matter, it will proceed to do full and complete justice between the parties and dispose of the whole matter.

11. Judgment, Acceptance of Note for. The release of a judgment against a firm and the acceptance of the individual note of one of the partners will not release the partnership from liability in the absence of an intention to that effect.

12. Practice: AMENDMENT OF PLEADING. A petition may be amended to make it correspond to changes which have occurred since the commencement of the suit, and new parties which have become interested in the property in litigation may be brought in.

13. Estoppel: FORECLOSURE SALE. A creditor by claiming a surplus arising from the foreclosure of a deed of trust will not be estopped to question its validity, because made in fraud of creditors on the objection of one who was a party to the fraud.

14. **Equity:** SUBROGATION. A creditor, who, in order to preserve his own security, is compelled to pay a prior incumbrance held by another creditor, will be subrogated in equity to the rights of such creditor to the extent necessary for his own protection.

*Appeal from St. Louis City Circuit Court.*—HON. L. B. VALLIANT, Judge.

REVERSED AND REMANDED.

*D. P. Dyer* for appellants.

(1) The mortgages to Mr. Kilgour and Mrs. Mitchell were valid by reason of Mr. Robertson's acquiescence. *Sexton v. Anderson*, 95 Mo. 373; *State ex rel. v. Brockman*, 39 Mo. App. 136, 137; *Huiskamp v. Wagon Co.*, 121 U. S. 310; *Purple v. Farrington*, 119 Ind. 164; *Pepper v. Peck*, 20 Atl. Rep. 16; *Coakley v. Weil*, 47 Md. 277; *Bank v. Klein*, 64 Miss. 141; *Sickman v. Abernathy*, 23 Pac. Rep. 447; *Carver v. Bannon*, 85 Tenn. 712; *Woodmansie v. Holcomb*, 34 Kan. 35. Express acquiescence is established by the evidence. The acquiescence implied from a mere failure to object after knowledge of the mortgage (which was obtained by Mr. Robertson in May, 1883) would have sufficed. *Davis v. Atkinson*, 124 Ill. 474. And in the case at bar the partnership is not alleged nor shown to have been insolvent at the date of the execution of these mortgages. (2) This is especially so as to Mr. Kilgour's interest, since his equities are at least equal to those of the partnership creditors. *Reeves v. Ayers*, 38 Ill. 421; *Siegel v. Chidsey*, 28 Pa. St. 286, 287; *Rose v. Shoe Co.*, 18 Weekly Notes of Cases (Pa.) 565, 568; *Marks v. Hill*, 15 Gratt. 400. (3) The suit at bar does not lie, because the claimants are subsequent creditors. *Farwell v. Metcalf*, 63 N. H. 276; *Haber v. Harshaw*, 49 Wis. 379; *Bank v. Overall*, 16 Mo. App. 510; *Payne v. Stanton*, 59 Mo. 158; *Hurley v. Taylor*, 78 Mo. 238. Indeed, the claims sued on occurred after

the mortgages were recorded, and after the holders of them had notice of them, which debars complaint on their part.   Bump on Fraudulent Conveyances [3 Ed.] p. 471.   (4) The transfer of Mr. Robertson's interest to Mr. Mitchell had the effect of rendering these mortgages valid, even if they would otherwise not have been so. *Fargo v. Ames*, 45 Ia. 491 ; *Jones v. Fletcher*, 42 Ark. 422. Especially in view of the covenants in the mortgages. 2 Herman on Estoppel, secs. 668, 670.   (5)   The conveyance from Mr. Mitchell to Mr. Kilgour, in 1884, being made with the acquiescence of Mr. Robertson was valid.   See authorities under point 1.   Indeed, on the transfer from Mr. Robertson to Mr. Mitchell, in 1884, the property became the individual estate of Mr. Mitchell, and he had the right to apply it to his individual indebtedness   without   Robertson's consent, especially since no fraud is either proven or even alleged as to that transfer.   *Ex parte Williams*, 11 Vesey, 3 ; *Hapsgood v. Cornwell*, 48 Ill. 64; *Goembel v. Arnett*, 100 Ill. 34 ; *Hanford v. Prouty*, 24 N. E. Rep. 568 ; *Armstrong v. Fahnestock*, 19 Md. 58 ; *Giddings v. Palmer*, 107 Mass. 269 ; *Allen v. Centre Valley Co.*, 21 Conn. 130; *Fulton v. Hughes*, 63 Miss. 61 ; *Poole v. Seney*, 66 Iowa, 506 ; *Trentman v. Swartzell*, 85 Ind. 443 ; *Hart v. Blum*, 13 S. W. Rep. 181 ; 1 Jones on Liens, sec. 791, *et seq.*; Lindley on Partnership [2 Am. Ed.] Ewell's notes, star p. 334, bot. p. 777, *et seq.* (6)   Even if the quitclaim were invalid as security for the transfer of Mr. Robertson's interest, it would be valid to secure the claims of Mr. Kilgour against the partnership. *Clements v. Moore*, 6 Wall. 299 ; Wait on Fraud. Conv., sec. 193, p. 275 ; ¦Bump on Fraud. Com. [3 Ed.] pp. 616, 617.   (7)   But even otherwise, the plaintiff acquiesced in and waived all right to object to the trustee's sale, in December, 1885, and, therefore, is restricted solely to whatever claim he has to the proceeds thereof, and has no right of action, if he had no right to any of those proceeds.·   *Boubede v. Ayers*, 29 La. Ann. 274 ; Bump on

Fraud. Conv., pp. 464, 467 ; Herman on Estoppel, p. 1199 ; also secs. 1140, 1143 and 1144. ( 8 ) And this is so, for the further reason that there was no obligation, on the part of Mr. Kilgour, to pay the interest. ( 9 ) The present plaintiff, to-wit, Mr. Colville's administrator, has no right to prosecute this suit, since Mr. Colville had no interest whatsoever in any of the claims against the partnership for which alone there could be any recovery in any event. R. S. 1879, sec. 3363; *Titterington v. Hooker*, 58 Mo. 593 ; *Cape Girardeau v. Harbison*, 58 Mo. 94, 95 ; *Reynolds v. Qualey*, 18 Kan. 361. ( 10 ) There cannot be a recovery as to any of the claims which have not been reduced to judgment. *Case v. Beauregard*, 99 U. S. 119 ; *Young v. Frier*, 9 N. J. Eq. ( 1 Stockt.) pp. 466, 467 ; *Mittnight v. Smith*, 17 N. J. Eq. ( 2 C. E. Green) p. 262 ; *Robb v. Stevens*, Clark's Ch. (N. Y.) 191 ; *Greenwood v. Broadhead*, 8 Barb., pp. 595, 597. There cannot be any recovery as to the claims of Mr. Adkins, who accepted Mr. Mitchell's note, with knowledge of the fact that Mr. Mitchell had assumed the partnership liabilities, and that the property had been conveyed to Mr. Kilgour. This indebtedness thereby ceased to be a partnership liability, and became the individual indebtedness of Mr. Mitchell. *Stone v. Chamberlain*, 20 Ga. 259 ; *Maier v. Canavan*, 8 Daly, 272 ; *Millard v. Thorn*, 56 N. Y. 402 ; *Colgrove v. Tallman*, 87 N. Y. 95 ; *Smith v. Shelton*, 35 Mich. 42 ; *Sefton v. Hargett*, 113 Ind. 595, 596 ; *Gates v. Hughes*, 44 Wis. 338 ; *Johnson v. Young*, 2 W. Va. 614 ; *Bell v. Hall*, 5 N. J. Eq. 447 ; Brandt on Suretyship, sec. 23.

*Valle Reyburn* and *Joseph S. Laurie* for respondent.

( 1 ) The evidence shows that Kilgour's acquisition of title was in fraud of the rights of the partnership creditors, and that said property continued liable for the payment of their debts. *Shackelford v. Clark*, 78

Mo. 49 ; *Hilliker v. Franciscus,* 65 Mo. 598 ; *Chouteau v. Priest,* 85 Mo. 398; *Phelps v. McNeely,* 66 Mo. 554; *Sexton v. Anderson,* 95 Mo. 373 ; *Bank v. Brenneisen,* 97 Mo. 145 ; *Hundley v. Farris,* 103 Mo. 78 ; *Bulger v. Rosa,* 119 N. Y. 459 ; *Stanton v. Westover,* 101 N. Y. 265 ; *Arnold v. Hagermann,* 45 N. J. Eq. 186 ; *Darby v. Gilligan,* 33 W. Va. 246 ; *Scott v. Caldwell,* 54 N. H. 414; *Roop v. Herron,* 15 Neb. 73 ; *Davis v. Burchard,* 53 Wis. 492 ; *Flack v. Charron,* 29 Md. 311. (2) Colville, and after him his administrator, was entitled to maintain this suit. *Hook v. Dyer,* 47 Mo. 214; *Mauldon v. Armistead,* 14 Ala. 702 ; *Emerson v. Bleakley,* 5 Abb. Prac. (N. S.) 350 ; *Keller v. West,* 39 Hun, 348 ; *Wetmore v. Hegeman,* 88 N. Y. 69. (3) When a court of equity once acquires jurisdiction of a cause it will avoid a multiplicity of suits by doing complete justice between the parties. *Sav. Inst. v. Collonius,* 63 Mo. 920 ; *Bank v. Harris,* 84 N. C. 206 ; *Clapp v. Dittman,* 21 Fed. Rep. 15 ; *Const. Co. v. K. C., etc., Co.,* 45 Fed. Rep. 7. Nor is it necessary that in all cases the creditor's demand shall be first put in judgment. *Humphreys v. Milling Co,* 98 Mo. 542. Adkins not only never released the firm, but there was an express agreement to the contrary, and further there was no consideration to support or sustain the alleged release. *Leabo v. Goode,* 67 Mo. 126 ; *Appleton v. Kennon,* 19 Mo. 637 ; Bates on Part., secs. 524, 538.

MACFARLANE, J.—This is a suit by plaintiff, as administrator of the trustee of certain creditors of a dissolved partnership, composed of Mitchell and Robertson, to subject to the payment of their debts certain property, formerly held by the partnership, but which had been transferred to defendant Kilgour, an individual creditor of Mitchell, for the satisfaction or. security of his debts.

About the first of September, 1881, Mitchell and Robertson entered into a partnership. At the time

Mitchell owned a thirty years' lease upon a lot in the city of St. Louis upon which the People's Theater was situated. The lease was in the name of Mitchell, and the theater had been built for him during the year, under the direction and supervision of Robertson, who had advanced a part of the money therefor. On the fifteenth of September, 1881, in settlement for the money advanced, Mitchell conveyed to Robinson an undivided one-third of this property, the express consideration being $35,000. This leasehold and buildings constituted all the property of the firm. Previous to the formation of this partnership, defendant Kilgour had loaned to Mitchell, at different times, sums which then aggregated $25,000, about $23,000 of which had also been used in the construction of the theater.

On the twenty-third of September, 1881, Mitchell made to Kilgour a mortgage on all his "right, title and interest" in said property, to secure the $25,000 indebtedness due to him. This deed was not recorded until May, 1883, and Robertson had no notice of it until then.

On the eighteenth of October, 1882, Mitchell and Robertson made a deed of trust to Wolf and Capin to secure a partnership debt for $35,000 for money borrowed from defendant Rea. This deed was at once recorded.

April 28, 1883, Mitchell made to his mother, Rebecca Mitchell, a mortgage on his "right, title and interest" in the property, to secure a note for an individual indebtedness to her for $10,000. This note was subsequently assigned to Kilgour.

During the partnership, the firm borrowed considerable sums of money from the Franklin Bank of Cincinnati, by means of the accommodation indorsement of Kilgour. At the dissolution, this indebtedness remaining unpaid amounted to $2,000 to $4,000.

In June, 1882, in settlement of partnership balances, Mitchell conveyed to Robinson an additional one-sixth of the property, thus making their interests equal.

The firm having become largely indebted, some of the debts having been reduced to judgments, and being unable to pay on June 17, 1884, Robertson conveyed by quitclaim deed to Mitchell, and on the fifth day of June, 1884, Mitchell conveyed by quitclaim deed to Kilgour; the former of these deeds was recorded July 22, 1884, and the latter the next day.

Under the contract of sale by Robertson to Mitchell, the latter assumed the payment of the partnership debts. The additional consideration was $9,000, which was divided into four notes of $1,800 each which Kilgour indorsed. Prior to the delivery of the deed from Robertson to Mitchell, the judgments standing against the partnership and against Robertson individually had been satisfied.

By this suit the creditors of the firm of Mitchell and Robertson undertake to subordinate the mortgages and interest of Kilgour to the payment of their debts. The various creditors assigned their debts to Samuel Colville, in whose name the suit was commenced. Colville, having died, the suit was revived in the name of his administrator, in whose name it has since been prosecuted.

The suit was commenced against Mitchell, Kilgour and Mrs. Mitchell. Pending the suit, the property was sold by the trustees under the Rea deed of trust, and Kilgour purchased at $48,000. Previous to the dissolution July 19, 1884, Kilgour paid off one of the Rea notes amounting to $10,000 which was secured by the deed of trust to Wolf and Capin.

Before the trustee's sale an amended petition was filed making Rea, Capin and Wolf parties, the prayer being to apply the surplus if any after the trustee's sale to the payment of the claims of plaintiff.

The proceeds of the sale were paid in satisfaction of the Rea deed of trust, $27,000, and the surplus, less expenses of the sale, was paid to Kilgour, and applied by him in satisfaction of the individual debts owing him by Mitchell. Wolf and Capin took from Kilgour an

indemnifying bond, before the money was paid him. Of the partnership demands held by plaintiff, some had been reduced to judgments, and some were simple contract debts.

The most important contention on the part of plaintiffs is that the mortgages made to Kilgour and Mrs. Mitchell by Mitchell, one of the partners, and the quit-claim deed made by Mitchell to Kilgour to secure individual debts of Mitchell were void as against partnership creditors. They were so held by the circuit court. Other less important questions are involved.

I.  It is well settled, in this state, as well as in other jurisdictions, that one partner cannot transfer the partnership property for the satisfaction of his individual debt without the consent or acquiescence of the other partners.  Each partner has the right, in equity, to have the property of the firm applied to the payment of the partnership debts.  Through these equities, among the partners, firm creditors derive the right to have the partnership assets appropriated to the satisfaction of their debts in preference to creditors of the individual partners.  The rights of the firm creditors, being derived through the equities of the partners among themselves, can necessarily only exist so long as the partnership itself continues.  It necessarily follows that a *bona fide* waiver of their equitable rights by the partners cuts off the derivative equities of the creditors. These principles are announced in the following recent decisions :  *Sexton v. Anderson*, 95 Mo. 381, and cases cited; *Huiskamp v. Wagon Co.*, 121 U. S. 310 ; *Purple v. Farrington*, 119 Ind. 164 ; *Pepper v. Peck*, 20 Atl. Rep. 16 ; *Coakley v. Weil*, 47 Md. 277 ; *Bank v. Klein*, 64 Miss. 141 ; *Sickman v. Abernathy*, 23 Pac. Rep. 447 ; *Caver Gin & Machine Co. v. Bannon*, 85 Tenn. 712 ; *Woodmansie v. Holcomb*, 34 Kan. 35.

If by his mortgages to Kilgour and his mother, Mitchell undertook and intended in good faith to withdraw from the partnership its property for the purpose

of appropriating it to the payment of his individual debts to them, and Robertson at the time gave his assent, or afterwards acquiesced thereto, the mortgages would have defeated the rights of the firm creditors to have the property first applied to the payment of their debts. But we do not think such was the intention of the partners as evidenced by their conduct, nor do we think the mortgages themselves can be given such construction. There can be but little doubt that Robertson acquiesced in the mortgages, after he received notice of them, but there is as little doubt that he only understood them to be merely intended to transfer the interest of Mitchell in the property that might remain after paying the debts and settling the accounts of the partnership, and that they were, and would be, subject to the rights of the creditors, prior and subsequent. The mortgage itself only undertook to convey the "right, title and interest" of Mitchell in the property. As between the partners, each had the "right" to have the whole property appropriated, if necessary, to the payment of the firm debts. The exclusive interest of each partner was only the right to receive a share of what might remain after the partnership liabilities should be settled. It is, therefore, held, no contrary intent appearing, that the mortgage of partnership property, of the character of that held by this firm, made by an individual member to secure an antecedent debt, though with the consent of the other partners, will not overreach the general lien of the partners, or the priority of partnership creditors. 1 Bates on Partnership, secs. 186, 291; 1 Jones, Mortgages, sec. 120; *Morse v. Gleason*, 64 N. Y. 204; *Conant v. Frary*, 49 Ind. 530; *Cunningham v. Ward*, 30 W. Va. 572; *Lewis v. Anderson*, 20 Ohio St. 281; *Hiscock v. Phelps*, 49 N. Y. 97; *Priest v. Chouteau*, 85 Mo. 408.

That it was not the intention that these mortgages should have the effect of overreaching creditors is manifest from the conduct of the parties in withholding

the instruments from record for such a length of time, and taking no steps to foreclose, though Kilgour, who held both mortgages, was fully advised that the firm was daily becoming more and more involved.

II.  It is insisted that, though these mortgages only had the effect of transferring to Kilgour Mitchell's surplus in the partnership property, after payment of the debts of creditors, yet the quitclaim deed made by Robertson to Mitchell in July, 1884, conveying to him all the partnership property, had the effect of dissolving the partnership and of cutting off the derivative equities of the creditors to follow the property into the hands of Kilgour, the vendee of Mitchell.

It is, as a general proposition, true, that after the dissolution of a partnership, even though it may be insolvent, by the sale and transfer of all its property, the creditors cannot follow the property into the hands of the purchaser, but that proposition is subject to the very material, and often controlling, qualification that the transaction must have been in good faith and not for fraudulent purposes.  If these transfers, which undertook to lodge the property in Kilgour, were fraudulent, the rights of creditors were not affected by them, and the property in the hands of Kilgour was not beyond their reach.  The question was considered with great care in the case of *Sexton v. Anderson*, 95 Mo. 381, and BLACK, J., speaking for the court, reaches the following conclusion:  "With us each partner is liable for all the partnership debts.  The partners may, so long as the firm exists, do with their property as they see fit.  The firm creditors have no lien on the partnership property for the payment of their debts while the firm continues to exist.  Partners have a right to have the partnership property applied to partnership purposes but this is a right or lien which they may waive.  Hence the great majority of adjudicated cases are to this effect, that all the partners may, by their joint act, dispose of partnership property in

liquidation and payment of a debt owing by an individual member of the firm. The qualification is, that the transaction must be in good faith, and not for fraudulent purposes." This conclusion is undoubtedly sound in principle, and is sustained by the highest authority. *Huiskamp v. Wagon Co.*, *supra ; Case v. Beauregard*, 99 U. S. 124 ; *City v. Willey*, 35 Iowa, 323, and the authorities cited under the first paragraph of this opinion.

The question then arises as to what effect the conveyance of the partnership property from Robertson to to Mitchell, and from him to Kilgour, had upon the rights of the creditors. If the transfers were fraudulent, their rights were not affected thereby ; if in good faith, their equities as firm creditors were at an end.

There can be no doubt from the evidence that, at the time of the transfer of the property by Robertson to Mitchell, the firm and each member thereof were wholly insolvent. Neither can it be doubted that Kilgour was fully aware of such insolvency. Mitchell, in his purchase from Robertson, having assumed the payment of the partnership debts, the property in his hands should have been applied to that purpose, and diverting it from such purpose to the payment of his private debts to Kilgour raises a very strong suspicion of an intended fraud upon Robertson and the firm creditors.

It must also be concluded, under the evidence, that Kilgour had knowledge of the transaction between Robertson and Mitchell, and all its details. It is evident from all the evidence that Mitchell and Kilgour undertook to so deal with Robertson as to destroy the equities of the firm creditors in the partnership property, and divert it from its legitimate course. The transaction must be held in fraud of the partnership creditors. *Phelps v. McNeely*, 66 Mo. 554 ; *Bulger v. Rosa*, 119 N. Y. 459 ; *Stanton v. Westover*, 101 N. Y. 265 ; *Arnold v. Hagerman*, 45 N. J. Eq. 186 ; *Darby v. Gilligan*, 33 W. Va. 246 ; *Caldwell v. Scott*, 54 N. H. 414 ; *Roop v.*

*Herron*, 15 Neb. 73; *David v. Birchard*, 53 Wis. 492; *Flack v. Charron*, 29 Md. 311. Some of these authorities hold that the transfer of partnership property by one member of an insolvent firm to another, and the transfer by the latter to secure an individual creditor, is fraudulent in law. In this case we hold the transactions to be fraudulent in fact.

III. Upon the death of a trustee of an unexpired trust of personal property, the trust estate descends to his executor or administrator. Hill on Trustees, 303; *Hook, Adm'r, v. Dyer*, 47 Mo. 214. A cause of action affecting the trust estate, pending at the death of the trustee in his own name, may be revived and prosecuted in the name of his executor or administrator. 1 Perry on Trusts, sec. 343; *Maulden v. Armstead*, 14 Ala. 702. Colville, being the trustee of an express trust of personal property, was authorized to prosecute the action in his own name ( R. S. 1879, sec. 3463 ), and upon his death the suit was properly revived in the name of his administrator, it not appearing that a successor had been agreed upon or appointed.

IV. The general rule undoubtedly is that before a creditor can call upon a court of equity to interfere in his behalf, in the collection of his debt, he must show that he has a demand certainly ascertained by having been reduced to a judgment at law, and that he has exhausted all his legal remedies. *Mullen v. Hewitt*, 103 Mo. 639; *Crim v. Walker*, 79 Mo. 335; *Humphreys v. Milling Co.*, 98 Mo. 548. This rule, of course, applies to claims which are purely legal, and for the satisfaction of which the creditor has no lien or equitable claim upon specific property. While the creditors of a partnership, strictly speaking, have no lien on the assets of the firm, they have the equitable right to have the assets appropriated to the payment of their debts in preference to the creditors of the individual partners.

As has been seen, the equities of the creditors were not defeated by the conveyance of Robertson to

Mitchell, for the reason that, when Mitchell took the property, in consideration thereof he assumed the payment of the partnership debts. The rights and equities of the creditors to the appropriation of the specific property can only be determined and enforced by proceedings in equity ; but can these rights be declared and enforced in one proceeding in the exercise or original equity jurisdiction? It has been held that, under such circumstances as appear in this case, the aid of a court of equity can be invoked to remove obstructions from the title, adjust the equities between the parties and subject the property accordingly even before a judgment at law has been obtained by the creditor. *Olson v. Morrison*, 29 Mich. 395 ; *Case v. Beauregard*, 101 U. S. 688; Pom. Eq., sec. 358. The weight of authority, however, holds the contrary, and requires the demands of the creditor to be reduced to judgments at law, creating a lien upon the estate, before a court of equity will take jurisdiction. Wait, Fraud. Conv. 120, sec. 75 ; *Young v. Frier*, 9 N. J. Eq. 466 ; *Dunlevy v. 1allmadge*, 32 N. Y. 457 ; *Parrish v. Lewis*, Freeman Ch. 306 ; *Reese v. Bradford*, 13 Ala. 847. Without undertaking to reconcile the conflicting authorities we deem it sufficient in this case, to say that, a number of the demands held by plaintiff having been reduced to judgments, the court thereby obtained jurisdiction over the subject-matter ; and, under the familiar principle that when a court of equity once acquires jurisdiction over the subject-matter it will proceed to do full and complete justice between the parties, we must conclude that the court had jurisdiction to dispose of the whole matter before it. *Real-Estate Sav. Inst. v. Collonious*, 63 Mo. 290 ; *Baile v. Ins. Co.*, 73 Mo. 384.

V. One of the firm debts held by plaintiff as trustee had been reduced to judgment against the partners prior to Robertson's conveyance to Mitchell. In order to effectuate the trade between Robertson and Mitchell,

and with the understanding that the partnership debts were thereafter to be paid by the vendee, Adkins, one of the creditors, paid this judgment and took the individual note of Mitchell for the amount. Defendants now insist that taking the note from Mitchell constituted a release of the partnership. The court allowed the debt as a claim against the partnership. We can see no reason for disturbing the finding of the court in doing so. It does not appear that, when Adkins released his judgment and accepted the individual note of Mitchell, he intended to release the partnership from its liability. *Leabo v. Goode*, 67 Mo. 126; *Appleton v. Kennon*, 19 Mo. 637.

VI. We do not think the court committed error in permitting the amendment to the petition, making it correspond to the changes which had occurred since the commencement of the suit, nor in allowing new parties who had become interested in the property to be brought in. Amendments are favored, and should be liberally allowed in furtherance of justice. R. S. 1879, secs. 3568, 3572.

VII. It is insisted that, by claiming the surplus arising from the trustees' sale, plaintiff admitted its validity, and for this reason the court improperly made the decree in the alternative, so as to require a sale of the property in case the amount of the surplus was not paid in discharge of the claims of plaintiff. We do not think that defendants stand in a position to raise this objection. It appears on Kilgour's own admission, that this sale was made for the purpose of cutting out all claims in this suit. All the parties to the sale were parties to the suit, when the sale occurred. The trustees and beneficiary knew the complaint of the creditors. While there is no doubt of the validity of the deed of trust held by Rea, and that he nor his rights were affected by subsequent dealings between the partners and Kilgour whom they were trying to prefer, yet, when he voluntarily comes in and lends his aid in the

efforts of Kilgour and Mitchell to defeat the firm credi-
tors, he will have to bear the taint of their companion-
ship.

The evidence shows that an agreement was perfected
prior to the sale, that the amount of the mortgage debts
should, as soon as Kilgour bought in the property, be
reloaned to him, and a new deed of trust upon the same
property taken to secure it.   The sale was, therefore,
in its effect, only a sham, and made for the preconceived
and admitted purpose of defeating an anticipated decree
of the court.   Under such circumstances there is noth-
ing inequitable in allowing the plaintiff all the advan-
tages the sale may give him, without being estopped to
deny its validity.

VIII.   Defendant Kilgour insists that he should
be given priority over the general firm creditors for the
amount of the note for $10,000, which was secured by
the Rea deed of trust, and which he paid off prior to the
trustees' sale.   This claim is based upon the equitable
principle, that, in paying this note, he relieved the
property from an incumbrance having priority over the
rights of partnership creditors, such payment being
necessary to protect his own interest in the property,
and he thereby became, as between himself and the
creditors, entitled to be subrogated to the priority of
the incumbrance discharged.

It is a well-recognized principle of equity, that a
creditor, who, in order to preserve his own security, is
compelled to pay a prior incumbrance, held by another
creditor, will be subrogated to the rights of such cred-
itor, to the extent necessary for his own protection.
3 Pom. Eq., sec. 1211 ; *Aldrich v. Cooper*, 2 Eq. Lead.
Cases, 228 ; Sheldon on Subrogation, sec. 3 ; *Evans v.
Halleck*, 83 Mo. 376; *Allen v. Dermott*, 80 Mo. 56 ;
*Wolf v. Walter*, 56 Mo. 292 ; *Orrick v. Durham*, 79
Mo. 174.

At the time this note was paid by Kilgour, he
held Mitchell's subsequent mortgages on the property,

subject to the rights of creditors, to the amount of about $35,000. This note for $10,000, secured by a prior deed of trust covering the whole property, was due and the property was liable at any time to advertisement and sale thereunder. In order to prevent a sale, and in order to secure an extension of time and a reduction of interest on the remaining $25,000 of the debt, he paid this note. In doing so he not only protected his own interest in the property, but also that of the firm creditors. Under the circumstances, we feel no hesitancy in concluding that he was entitled to be reimbursed for the amount so paid and interest thereon from such payment, in preference to the claims held by plaintiff.

After a careful examination of the evidence, we find no reason for disturbing the finding and decree of the circuit court in any other particular.

Judgment reversed and cause remanded with directions to order a credit, as of the date of the trustees' sale, to defendant Kilgour, or the trustees, Wolf and Capin, for $10,000, the amount of the Rea note paid by Kilgour, with interest thereon from the time of its payment to the date of the trustees' sale at the rate the remaining unpaid notes bore. All concur.