MANSUR-TEBBETTS IMPLEMENT COMPANY v. J. J. RITCHIE and S. P. HUDSON; E. E. BRUTON, Interpleader, Appellant.

In Banc, December 18, 1900.

1. **Attachment:** DEED OF TRUST: KNOWLEDGE OF FRAUD. Ritchie and Ratliff were partners in an insolvent firm, and Hudson bought Ratliff's interest, borrowing money from a bank for the purpose, the bank knowing the purpose of the loan. Afterwards, Ritchie and Hudson continued the business as partners, and contracted the debt to recover which plaintiff sues in attachment. Then Ritchie bought out Hudson's interest and gave his note secured by a chattel mortgage on the stock to secure the note, and Hudson transferred the note and mortgage to the bank as collateral security for what he, Hudson, owed the bank. Thereafter, upon being advised that the transaction was not valid, Ritchie gave his note to Hudson and executed a deed of trust conveying to the interpleader, Bruton, as trustee, the whole stock of goods to secure the note. Hudson immediately transferred the note to the bank, in payment of the loan previously made him to buy Ratliff's interest. Bruton took possession of the goods, and next day the plaintiff attached them as being the property of Ritchie and Hudson, and Bruton interpleaded. The bank knew all about the transactions from the first and aided their consummation. *Held,* that this case should be affirmed, in spite of certain errors in the instructions, on the ground that the judgment is in accordance with the merits of the case.

Mansur-Tebbetts Imp. Co. v. Bruton. ,

2. **Erroneous Instruction:** BANK'S PARTICIPATION IN FRAUD. The deed of trust, which was made for the bank's benefit, could not be held void simply because the bank took it with the view of paying its debt, but only upon the finding of the fact to be that the bank's purpose was to assist the debtors in their fraudulent scheme. Hence, an instruction that declared that the deed would be invalid if executed with a purpose on the part of the debtor to hinder and defraud his creditors, and the bank had knowledge of such fraudulent purpose, was error. *Held*, also, that the bank's mere act of taking the deed without intent to defraud, did not invalidate the deed, even though the makers' purpose was to defraud their creditors.

3. **Partnership:** DEED TO PAY PARTNER'S DEBT. The deed in this case was not void on the theory that it was given to secure the individual debt of a member of the firm. If acting in good faith, one partner may, with the consent of the other members of the firm, mortgage partnership property to secure his individual debt.

4. ————: ————: UNPAID CREDITORS. *Held*, by MARSHALL, J., that one partner can not buy another partner's interest in the firm and afterwards use the assets of the firm to reimburse himself, and leave the creditors of the firm unpaid; and a bank to which was transferred the goods with full knowledge of the fact that that was the purpose and intention of the transfer, can not hold such goods against the attaching creditor.

Appeal from Montgomery Circuit Court.—*Hon. E. M. Hughes,* Judge.

AFFIRMED.

*Wm. M. Williams* and *G. Pitman Smith* for appellant.

The court erred in giving declarations of law numbered 2 and 4 asked by the attaching creditor. Ritchie had the right to prefer one creditor to another, even though the effect of such preference was necessarily to hinder or delay other creditors in the collection of their debts. The declarations of law complained of announce the proposition that, notwith-

standing the Sturgeon Savings Bank had a *bona fide* debt, and accepted the assignment of the Ritchie note in payment thereof, yet, if, in taking said deed of trust, it assisted Ritchie and Hudson, or either of them, to hinder or delay their creditors, the finding should be against the interpleader. Omitting the alternative proposition contained in the fourth declaration of law, it required a finding against the interpleader, if the court believed from the evidence that the Sturgeon Savings Bank took an assignment of the deed of trust put in evidence, upon the stock of goods of J. J. Ritchie, to secure the payment of a debt actually due to it, provided the court should also believe that the Sturgeon Savings Bank, or J. S. Ritchie, its cashier, in taking said deed of trust, did assist Ritchie and Hudson, or either of them, to hinder or delay any of their other creditors. Under this declaration of the law, the court was bound to find for the attaching creditor, notwithstanding the debt due the Sturgeon Savings Bank was an honest one, if, in taking said·deed of trust, said bank did assist either Hudson or Ritchie to hinder or delay any of their other creditors. A conveyance of property may have the effect of hindering or delaying some creditors of an insolvent, but this will not render the conveyance void. A conveyance made with the intent of paying some creditors, or one creditor, though it might necessarily hinder and delay other creditors, and must therefore have been made with that intent, also, and was, therefore, actually made to hinder and delay creditors—that is, some creditors of the insolvent— would not be bad on that account. State to use v. Laurie, 1 Mo. App. 377; Shelly v. Boothe, 73 Mo. 76; Hazel v. Bank, 95 Mo. 66; Gates v. Lebaume, 19 Mo. 29; Etlinger v. Kahn, 134 Mo. 495; Henley v. Taylor, 78 Mo. 240.

*George Robertson* and *Morton Jourdan* for respondent.

(1)    There was an abundance of evidence to establish the partnership between J. J. Ritchie and S. P. Hudson. Mansur-Tebbetts Implement Company v. Ritchie, et al., Bruton, Interpleader, 143 Mo. 587. It would be impossible, under the circumstances, for the cashier of the bank not to have known that fact.    While it is true that Ritchie gave his note to Hudson, March 5, 1894, for an amount corresponding to the amount Hudson had put into the partnership, it is also true that there is no credible evidence of any dissolution of the partnership at that or any other time.    Instead of this being an evidence of dissolution, it is the most potent evidence of fraud on the part of both partners.    At that time the firm owed from ten to twelve thousand dollars; were hopelessly insolvent, and that Hudson should sell to J. J. Ritchie for something over $2,000, and that this note should be used to pay the debt of Hudson at the bank, is within itself a fraud upon the partnership creditors and establishes conclusively an intent on the part of the persons participating in the transaction to defraud the creditors of the firm.    Mansur v. Ritchie, 143 Mo. 587; Priest v. Chouteau, 85 Mo. 398; Cannon v. Lindsay, 7 Am. St. Rep. 38; Wright v. Boynton, 72 Am. Dec. 319, note 323; Wait on Fraud. Con. (2 Ed.), 308; U. S. v. Hack, 8 Peters 271.    (2)    Plaintiff's third and fourth instructions properly declare the law.    They simply declare that if the cashier of the beneficiary bank took the deed of trust with intent to hinder, delay or defraud creditors of the grantor, or to assist J. J. Ritchie in such intent or design, then the deed is fraudulent.    This is certainly the law.    R. S. 1899, sec. 3398; Mansur v. Ritchie, *supra*; Ensworth v. King, 50 Mo. 477; Farwell v. Meyer, 67 Mo. App. 566; Van Raalte v. Harrington, 101 Mo. 602; McDonald v. Hoover, 142 Mo. 484; Black v. Ryan, 65 Mo. App. 230; Pierson v. Stifer, 52 Mo. App. 273; Deering v. Collins, 38 Mo. App.

73; Sexton v. Anderson, 95 Mo. 373; State ex rel. v. Purcell, 131 Mo. 312; Rupe v. Alkire, 77 Mo. 641. (3) While the court refused plaintiff's instructions authorizing a recovery that the conveyance is fraudulent *per se*, as against the partnership creditors, for the reason that it is an effort on the part of the one partner to pay his individual debt by a transfer of the whole of the partnership property when the partnership is insolvent, yet the verdict may be sustained on this ground alone. Mansur v. Ritchie, 143 Mo. 587; Menaugh v. Whitewell, 52 N. Y. 146; Wilson v. Robertson, 21 N. Y. 587; Reyburn v. Mitchell, 106 Mo. 365; Grocery Co. v. McCune, 122 Mo. 426; Paper Co. v. Haskell, 144 Mo. 331.

IN DIVISION ONE.

VALLIANT, J.—This is a controversy between the plaintiff, who is an attaching creditor of defendants Ritchie and Hudson, on the one part, and F. E. Bruton, trustee for the Sturgeon Savings Bank, who claims the goods attached, on the other part.

This is the second appeal to this court in the same cause. A full statement of the case by MARSHALL, J., is contained in the report of the former appeal, Mansur-Tebbetts Imp. Co. v. Ritchie, 143 Mo. 585, a reference to which will render only a very brief statement necessary at this time.

On May 10, 1894, defendant Ritchie, who was then engaged in mercantile business, made his note to defendant Hudson for $2,224.75, and executed a deed of trust conveying to interpleader Bruton, as trustee, his whole stock of goods to secure the note. Hudson immediately transferred the note to the Sturgeon Savings Bank, in payment of notes of his held by the bank, and the deed was recorded that day. Bruton took possession of the goods on May 11, and the next day, May 12, plaintiff had them seized under its attachment and they were sold, under order of the court, for $2,593.05.

Bruton filed an interplea in the attachment suit, claiming the goods attached by virtue of the deed of trust. Plaintiff answered attacking the note and deed of trust on the ground of fraud, averring that Ritchie and Hudson were partners and that the note and deed were made without consideration, executed for the purpose of hindering, delaying and defrauding their creditors and that the Sturgeon Savings Bank took the note and deed with the knowledge of that purpose, and with the intent to aid them in it. Issues were joined and the cause was tried by the court, a jury being waived. There was testimony tending to prove that Ritchie and Hudson were partners in trade, and that they had purchased goods from plaintiff on credit when they were insolvent, had made a false statement of their financial standing to obtain the credit, and that the goods obtained from plaintiff were included in those covered by the deed of trust in question; that at the date of the deed of trust Ritchie and Hudson were insolvent, owing over $5,000 of merchandise accounts, besides considerable individual debts, and this deed of trust covered practically all they had that was available to their creditors. Plaintiff's testimony also tended to show that the cashier of the bank who transacted this business was the father of defendant Ritchie and was cognizant of his business affairs.

On the part of the interpleader the testimony tended to prove that Hudson had borrowed money from the bank to buy out a former partner of Ritchie, for which he had given the bank his note, and had also given the bank his note for part of an overdraft that Ritchie owed the bank. Just what the relations of Ritchie and Hudson were after the latter bought out the interest of Ritchie's former partner, he did not very clearly show, but his testimony did tend to show that in March, 1894, Ritchie assumed to pay Hudson for the debt

that he had incurred with the bank, and gave him his note for the amount, and a chattel mortgage to secure it, and thus became, if he had not been before, the sole owner of the business, and that note and chattel mortgage Hudson had given to the bank as collateral to his notes. But in May, 1894, they were advised that the chattel mortgage was not valid and in order to secure his debt to Hudson, Ritchie executed the note and deed of trust in suit with the purpose of having Hudson transfer them to the bank and take up his paper there; the bank was also cognizant of this purpose. Accordingly, immediately on the execution of the note and deed, Hudson transferred them to the bank, and the bank surrendered to him his notes and the collateral it had formerly held.

The court gave a number of instructions, both for plaintiff and for the interpleader, but as the correctness of only two of those given is challenged, it is necessary to copy only those two here. They are the second and fourth instructions given for the plaintiff, and are as follows:

"2. The court declares the law to be that direct and positive evidence is not required to establish or prove fraud, but it may be gathered and inferred from all the facts and circumstances in the case; and if the court believe from all the facts and circumstances in evidence in this case that J. J. Ritchie gave the note and deed of trust read in evidence to S. P. Hudson with the intent to hinder, delay or defraud his creditors, and that said J. S. Ritchie, cashier of the Sturgeon Savings Bank, the assignee and beneficiary in said deed of trust, had knowledge of said fraudulent intent, and aided or in any manner abetted or assisted him in carrying out said fraudulent intent, then the verdict must be for the Mansur-Tebbetts Implement Company on this issue between it and the interpleader.

"4.  The court, sitting as a jury, declares the law to be that if it believes from the evidence that the Sturgeon Savings Bank took an assignment of the deed of trust put in evidence upon the stock of goods of J. J. Ritchie to secure the payment of a debt actually owing to it, yet if the court also believes from the evidence that the Sturgeon Savings Bank or J. S. Ritchie, its cashier, intended, in taking said deed of trust, not only to secure the debt of the bank but also to assist Ritchie, or Ritchie and Hudson, or either of them, or did assist them or either of them to hinder, delay or defraud any of the other creditors, then the verdict must be in favor of the plaintiff in this case and against the interpleader."

There was a finding and judgment for plaintiff, from which, after his motions for new trial and in arrest were overruled, the interpleader has appealed.

I.  Without intending to express any opinion as to which side, on any of the questions involved, the evidence preponderates, we deem it sufficient to say that the testimony on the part of the plaintiff tended to prove that the note and deed of trust in question were executed by Ritchie and Hudson, with the intent to hinder, delay and defraud their creditors and that the bank took the note with knowledge of that intent on their part.  If there was any testimony tending to prove that the bank had any other purpose in the matter than to selfishly secure its own debt, it was the inference only drawn out of the fact that the cashier was intimate with the business affairs of his son.  There is no doubt that Hudson justly owed the bank, and the testimony tended to prove that Ritchie justly owed Hudson the full amount of the note, which in fact stood for money the bank had advanced to Hudson to buy out Ritchie's partner, and to Ritchie on his overdraft, one-half of which Hudson assumed.  There was

no direct evidence, even if there was any of inferential character, to show that the bank agreed or intended to assist any fraudulent purpose that Ritchie and Hudson might have by devoting any part of the proceeds of the note and deed of trust to their use.

It is not claimed by the counsel for the plaintiff. that the transaction as far as the bank is concerned, would be rendered invalid because the note and deed were executed by Ritchie and Hudson with intent to hinder, delay and defraud their creditors, even though the bank knew that such was their purpose, nor though the bank knew that the taking of the deed would necessarily defeat other creditors. But it is conceded that to break down the deed in the bank's hands, it must be shown that the bank had some other purpose in view in taking it than merely securing its debt; that is, that the bank had the purpose to assist the debtors in their fraudulent scheme. Yet in the second instruction it is declared that the deed would be invalid if executed with that purpose on the part of Ritchie, and if the cashier of the bank "had knowledge of said fraudulent intent, and aided or in any manner abetted or assisted him in carrying out said fraudulent intent." Would not the mere taking of the deed, knowing Ritchie's purpose, be assisting him in carrying out that purpose?

In the fourth instruction it is said that the verdict must be for plaintiff if the deed was executed by Ritchie for the purpose of defrauding his creditors, and if the bank or its cashier "intended, in taking said deed of trust, not only to secure the debt of the bank, but also to assist Ritchie or Ritchie and Hudson, or either of them or did assist either of them to hinder, delay," etc. That is to say, the deed is invalid if the bank intended to assist in the fraudulent purpose, or whether it intended to do so or not, if in point of

fact it did assist them or either of them, in accomplishing their purpose. Unquestionably, if Ritchie's purpose was as plaintiff thinks it was, the bank, by merely taking the deed, did assist in carrying that purpose into effect. This court has often held that a creditor may take security for his debt, though he may know that it will defeat other creditors, and though he may know that his debtor intends thereby to defraud them. [Shelly v. Boothe, 73 Mo. 74; Holmes v. Braidwood, 82 Mo. 610; Albert v. Besel, 88 Mo. 150; Frederick v. Allgaier, 88 Mo. 598; Alberger v. White, 117 Mo. 347; Crothers v. Busch, 55 S. W. 149.]

Instruction two above mentioned was contained in the record in the former appeal, it was there designated as instruction seven; but the only objection then urged against it was that it failed to require the jury to find a fraudulent intent on the part of Hudson. The point now made was not then called to the court's attention and was not decided.

Instruction four was also in the former record with one very material difference. In the form in which it was then before the court it directed a verdict for the plaintiff, if the jury should find that the deed was executed by Ritchie for the purpose of hindering, etc., his creditors, and that the bank "intended in taking said deed of trust not only to secure their own debt, but also to assist J. J. Ritchie or Ritchie and Hudson, or either of them, *and* did assist them or either of them in hindering," etc. That is, that the bank took the deed not alone to secure its debt but intending also to assist Ritchie and Hudson in their fraudulent purpose and did so. In that form the intention to assist in the fraud is joined with the act and the instruction was entirely proper, but as we now have it it is disjunctive in form; it means that the mere act of taking the deed will fill the requirement without the intent to defraud. There is nothing in any of the other

instructions to cure this error.    Each of these instructions is on the whole case, and directs a verdict for the plaintiff if facts are found as therein propounded.

The distinction between the act of accepting a deed with the intention of assisting the grantor in carrying out his fraudulent design, and accepting it merely knowing his fraudulent purpose and knowing what the result will be, but intending only to take security for one's own debt, is a distinction that the average juror is not liable to observe.    A jury is also apt to fail to distinguish between the fraud of the grantor and that of the grantee in such a case and to visit the fault of the one on the head of the other.    The duty is on the trial court to carefully enlighten the jury on these intricate points.

The second and fourth instructions above mentioned were erroneous in the particulars named.

II.    A large part of the record is taken up with the question whether or not Hudson was a partner of Ritchie, and it is contended here that since the evidence shows that relation to have existed between them, the court should as a matter of law declare the deed of trust invalid.

The fact that Hudson was a partner of Ritchie, if he was, is a circumstance to be considered among all the other surroundings as bearing on the question of fraud in their dealings with each other, but it is not the all-important and conclusive fact in the case.    A member's interest in the property of the firm is his share of what remains after the partnership debts are paid, and the rights of his creditor are no greater than his own.    A member, without the consent of his partners, can not assign any of the partnership property to secure his individual debt.    But the partnership creditors have no lien on the partnership property, and it is lawful for the firm, or for one member with the assent of the other

members, to assign partnership property for the security or payment of the debt of a member, if the transaction is without fraud.

The facts in Priest v. Chouteau, 85 Mo. 398, were that De Bar, one of the firm, without the consent of the others, had given a deed of trust on his individual interest in the partnership property to secure a debt he owed to Priest; it was held that Priest's security was postponed to rights of the partnership creditors. The theory involved is that each partner owns, not a particular part of the firm's property, but an interest in all of it, and has a right to have it applied to the payment of the debts in which he is concerned. The equities of the firm creditors are worked out through the members of the firm.

In Reyburn v. Mitchell, 106 Mo. 365, Mitchell, a member of the firm, had given two mortgages, one to Kilgour and one to his mother, each on "his right, title and interest" in the property. There was evidence tending to show that Robertson, the other partner, acquiesced in these mortgages, but there was also evidence tending to show that they and the mortgagees understood and intended the mortgages to be subordinate to the payment of the firm debts; that was a question of fact in the case. This court, per MACFARLANE, J., said: "It is well settled in this State, as well as in other jurisdictions, that one partner can not transfer the partnership property for the satisfaction of his individual debt without the consent or acquiescence of the other partners. Each partner has the right, in equity, to have the property of the firm applied to the payment of the partnership debts. Through these equities among the partners, firm creditors derive the right to have the partnership assets appropriated to the satisfaction of their debts in preference to creditors of the individual partners. The rights of the firm creditors,

being derived through the equities of the partners among themselves, can necessarily only exist so long as the partnership itself continues.   It necessarily follows that a *bona fide* waiver of their equitable rights by the partners cuts off the derivative equities of the creditors.   These principles are announced in the following recent decisions:   Sexton v. Anderson, 95 Mo. 381, and cases cited; Huiskamp v. Wagon Co., 121 U. S. 310; Purple v. Farrington, 119 Ind. 164; Pepper v. Peck, 20 Atl. Rep. 16; Coakley v. Weil, 47 Md. 277; Bank v. Klein, 64 Miss. 141; Sickman v. Abernathy, 23 Pac. Rep. 447; Caver Gin & Machine Co. v. Bannon, 85 Tenn. 712; Woodmansie v. Holcomb, 34 Kan. 35.   If by his mortgages to Kilgour and his mother, Mitchell understood and intended in good faith to withdraw from the partnership its property for the purpose of appropriating it to the payment of his individual debts to them, and Robertson at the time gave his assent, or afterwards acquiesced thereto, the mortgages would have defeated the rights of the firm creditors to have the property first applied to the payment of their debts.   But we do not think such was the intention of the partners as evidenced by their conduct, nor do we think the mortgages themselves can be given such construction."

In Goddard-Peck Gro. Co. v. McCune, 122 Mo. 426, the insolvent firm before its assignment gave the firm notes for the individual debts of its members.   This court, per Burgess, J., said:   "No principle of law is better settled than that, in the administration of an insolvent partnership estate, the assets of the firm must be applied to the satisfaction of the firm creditors to the exclusion of the creditors of the individual partners.   [Hundley v. Farris, 103 Mo. 78; Bank v. Brenneisen, 97 Mo. 148, and cases cited in each.]   The principle we think is equally well settled by the more recent decisions of this court, as well as by the weight of judicial

Vol. 159 Mo.—15.

authority in other jurisdictions, that the assets of an insolvent firm, before dissolution, may, with the consent of all the partners, be applied to the satisfaction of all the individual debts of the members of the firm, when done in good faith. [Sexton v. Anderson, 95 Mo. 380; Reyburn v. Mitchell, 106 Mo. 365, and cases cited in each; Seger's Sons v. Thomas Bros., 107 Mo. 635.]"

A large number of authorities, outside of this State, are cited in that decision, including decisions of the Supreme Court of the United States, which fully sustain the doctrine there laid down.

What is now here said on this point is not entirely in accord with what was said on the subject when this cause was here on the former appeal. But then the point was not advanced by counsel, as it is now, nor discussed in their briefs; it was not then insisted as it now is that the deed of trust was invalid because it attempts to appropriate partnership property to the security of the debt of an individual.

If, therefore, it be conceded that Ritchie and Hudson were partners in trade, at the time of the execution of the deed of trust, and that it was given to secure Hudson's individual debt to the bank, having been executed with the consent of both partners, it would be perfectly valid, if it was accepted by the bank in good faith for the sole purpose of securing the debt. The trial court did not err in refusing the instruction asked by the plaintiff on the theory that the deed was void because given to secure the individual debt of a member of the firm. The only errors we find in the record are those above pointed out in instructions two and four given for the plaintiff. For those errors the judgment should, in the opinion of the writer, be reversed and the cause remanded for re-trial. But as a majority of the court are of the opinion that the judgment should be affirmed, it is so

ordered. The views of *Robinson* and *Marshall, JJ.*, are expressed in a separate opinion by *Marshall, J.*

IN BANC.

PER CURIAM.—In the foregoing opinion by *Valliant, J.*, in Division No. One, *Gantt, C. J.*, concurs. *Brace* and *Robinson, JJ.*, concur in paragraphs I and II, but do not concur in the result. The views of *Brace, J.*, on the result are expressed in a separate opinion by him. The views of *Sherwood, Robinson* and *Marshall, JJ.*, are expressed in the separate opinion by *Marshall, J. Burgess, J.*, absent. The majority of the court being of the opinion on the result that the judgment of the circuit court should be affirmed, it is so ordered.

SEPARATE OPINION.

BRACE, J.—I concur in the legal propositions laid down by *Valliant, J.*, in the foregoing opinion, and agree that the declarations of law numbered 2 and 4 for the plaintiff are obnoxious to the criticism passed upon them in the opinion. But I do not think the judgment should be reversed for the inaccuracies therein. The judgment of the circuit court is in accordance with the merits of the case, and under section 2303, Revised Statutes 1889, should be affirmed.

SEPARATE OPINION.

MARSHALL, J.—The facts in this case are set out in this same case, on former appeal, 143 Mo. 587.

Bluntly stated the crucial facts are: Ritchie and Ratliff were partners, and the firm was insolvent. Hudson

bought Ratliff's interest in the firm.    To do so he borrowed
money from the Sturgeon Savings Bank, the bank knowing
the purpose of the loan.    Afterwards Ritchie and Hudson
continued the business as partners, and contracted the debt
with plaintiff.    Then Ritchie bought out Hudson's interest
and gave his note secured by a chattel mortgage on the stock
to secure the note and Hudson transferred the note and
mortgage to the bank as collateral security for what he, Hud-
son, owed the bank.    Thereafter, upon being advised that
the transaction was not valid, Ritchie gave the note and deed
of trust, in suit, to Hudson and Hudson transferred them to
the bank and the bank surrendered Hudson's note to him.
The bank had full knowledge of all the facts.

The legal effect of this is this:    Ratliff realized on his
interest in the firm, to the disadvantage and in fraud of the
creditors of the firm.    Hudson became a partner in an in-
solvent firm and of course became liable for its debts.    There-
after, Hudson sold his interest in the firm to his partner
Ritchie, and recovered all he had put into the firm, leaving
the creditors unpaid, and Ritchie was enabled to buy out
Hudson's interest in the firm by giving a deed of trust on the
goods of the firm, most of which were purchased from plain-
tiff after Hudson became a partner.    The result, if the claim
of the interpleader is sustained, is to permit one partner
to buy another partner's interest in the firm and to
use the assets of the firm for that purpose, and thereby
let  one  of  the  partners  recover  what  he  put  into
the firm and leave the creditors unpaid.    One partner
can not thus enable the other partner to come out whole and
thus defraud the firm's creditors.    In this case the bank knew
all these facts and the purposes of the partners and actually
assisted in the fraud, in fact made the fraud possible.    The
bank is therefore in no better position than Hudson would be

if he held the Ritchie note secured by the deed of trust, given by Ritchie to purchase Hudson's interest in the firm. No one would contend that Hudson could maintain the deed of trust against the creditors of the firm. The bank stands in Hudson's shoes and has no better claim than Hudson would have if he was the party claiming the validity of the deed of trust.

No decision of this or any other court can be found to support such a transaction, and none of the cases cited give any countenance to or support for such a proposition.

There is a vital difference between this case and the case of Huiskamp v. Moline Wagon Co., 121 U. S. 310, relied on by appellant's counsel, in this, that in that case the individual debt of the partner, which was paid out of partnership assets, was an honest debt, not tainted with fraud in its creation, and the party paid was not a partner, and the creditor had no knowledge of any fraud on the part of the firm or the partner who owed him, while here the debt secured was fraudulent in law as between the firm and its members and the creditors of the firm and the bank knew it. Hence the difference between this case and the Huiskamp case.

This is conclusively demonstrated by the fact that the parties were advised that the first note and mortgage, made in March, by Ritchie to Hudson, and by the latter transferred to the bank as collateral security for his debt to the bank, was not valid, and so the matter was, in May, put in the shape it now appears.

For these reasons I do not think any judgment in favor of the interpleader herein establishing the validity of this deed of trust could ever be allowed to stand in any court, and hence, without following the criticisms as to the instructions given or deciding whether they were erroneous or not, I am

of opinion that the judgment of the circuit court was for the right party and should be affirmed. *Sherwood* and *Robinson, JJ.*, concur.